## DAWSON *vs.* DUPLANTIER.

APPEAL FROM THE COURT OF THE THIRD DISTRICT FOR THE PARISH OF EAST BATON ROUGE, THE JUDGE OF THE DISTRICT PRESIDING.

Where the purchaser of a plantation and slaves, under mortgage for bank stock, stipulates that the seller may reserve certain slaves and he will put in others, and assumes her obligations to the bank, he cannot claim a rescission of the sale on an exception to her right to proceed against the plantation and slaves for the price, or damages in a direct action, on the ground that she (the seller) has not transferred the bank stock; until he puts her in default by showing a readiness and offer, on his part, to perform what by the contract he was first bound to do, or at least simultaneously.

When no time is fixed by a contract, within which the mutual stipulations are to be performed, either party may claim an immediate performance according to its terms, and in the mode pointed out by law for enforcing similar reciprocal engagements.

A sheriff, who is the nearest relation and son of one of the parties, is not incompetent to act and execute process in the case. It is a pecuniary interest alone, that renders him incompetent.

37      VOL. XV.

EASTERN DIST.
*April*, 1840.

DAWSON
*vs.*
DUPLANTIER.

A judgment by default cannot be taken by the plaintiff in an opposition and injunction to an order of seizure and sale. No answer is required; a rule taken by the adverse party to dissolve the injunction is equivalent to an answer; and such opposition and injunction are to be tried summarily.

The trial of a rule taken to set aside and dissolve an opposition and injunction staying executory proceedings, is a trial on the merits, in which the plaintiff therein is called on to support the grounds of his opposition by evidence.

This case commenced by the executory proceeding. The defendant, Madame Constance Rochon Duplantier, having sold to the plaintiff a plantation, slaves, and three hundred shares of Union Bank stock, took his seven promissory notes, payable in instalments of thirteen thousand two hundred dollars each, for the greater part of the price, secured by endorsement and mortgage on the premises, took out an order of seizure and sale, when the first note became due and was protested, for the sale of the entire premises; so much for cash as would pay the first note, and the balance on such credits as would meet the remaining notes as they became due.

The plaintiff made opposition, and obtained an injunction against this executory proceeding: First, that a main inducement to the contract, on his part, was to obtain the three hundred shares of Union Bank stock, which at the time of the purchase was worth from twenty to twenty-five per cent. per annum on the nominal amount, viz: thirty thousand dollars. The petitioner alleges, that the consideration of the notes has failed, together with that which he has paid, amounting in all to one hundred and twenty-seven thousand dollars, in consequence of Madame Duplantier failing and neglecting to transfer the bank stock, and to comply with her stipulated engagements; that he went to the Union Bank in New-Orleans, for the purpose of receiving a transfer, and to comply in good faith on his part, and at the time agreed on; but the vendor failed on her part; and that she had secured a loan of fifteen thousand dollars, for which the plantation and slaves were liable to be seized and sold. Second, that the vendor was without title to some of the slaves, and others

were afflicted with redhibitory diseases. He prays that the sale be rescinded, and that he recover back what he has paid, have his notes cancelled and given up, and five thousand dollars in damages.

The plaintiff further alleged, that Madame Duplantier was proceeding illegally to enforce her order of seizure, by causing the writ to be executed by A. Duplantier, sheriff of the parish of East Baton Rouge, who is her son and forced heir, and is legally incapacitated to act therein on the score of *interest;* that she could only proceed on her mortgage by alleging and showing that she had complied with all the stipulations in said contract, on her part. He further prays that an injunction be awarded and perpetuated, staying said proceedings.

The defendant's counsel took a rule on the opening of the term of the court, in January, 1839, on the plaintiff, to show cause why the injunction should not be dissolved, and the opposition overruled. At the same time the plaintiff filed his peremptory exception to the order of seizure and sale, that it be annulled and set aside, because the contract of sale contains mutual stipulations, which are not and cannot be shown to have been performed in this summary mode of proceeding; that the transfer of the bank stock was a condition precedent on the part of Madame Duplantier, to be first performed; that if it did not contain a condition precedent, it was an obligation on her part to be performed at the same time with those on his part, and she was bound to place him in default by offering to perform, &c.; that her loan from the Union Bank was an incumbrance on the property, and made it liable to seizure, and consequently he was disquieted in his title and possession.

These rules were taken up and tried together; and on the plaintiff objecting, the court decided, that the rule was only assigning the cause for trial on a particular day, and the petition for an injunction was to be considered as an answer to the petition for the order of seizure and sale; that the plaintiff in injunction was called on by the rule to support the allegations in his petition. The opinion of the court was excepted to by the plaintiff.

The contract of sale, with its various stipulations, was in evidence, and its material parts stated in the opinion of this court. The district judge, on examining the act of sale and hearing the parties, was of opinion there were no legal grounds to support the injunction and opposition, gave judgment, overruling all the objections to the executory proceeding and dissolving the injunction, with ten per cent. interest and twenty per cent. damages. The plaintiff appealed.

*Elam* and *Barton,* for the plaintiff in opposition, contended that:

1. The defendant's counsel admits that the obligations of Dawson were prospective ; that the time implied by the contract when he was to offer the slaves to be mortgaged, was fixed for the 1st March, 1837. That this was " part of the consideration of the sale, and implied that the slaves removed by the plaintiff should not be subject or liable to be seized and sold on the falling due of that instalment."

This, the plaintiff could not do without the instalment due and protested on the 1st March 1836, being first paid, and it is not pretended that Dawson was to make that payment. Then the first act to be done was by Madame Duplantier, and Dawson has not been guilty of an *active violation* of his contract. *Louisiana Code,* 1926. Under these circumstances we were not bound to pay in 1837 or 1838. 6 *Louisiana Reports,* 30. Or to offer a performance.

2. Admit Dawson's undertaking was to satisfy the bank, that the slaves substituted and offered by him were in every respect equal security with those taken off by the plaintiff at the date of the sale (28th June, 1836,) yet Dawson did not obligate himself that the bank should not close the mortgage on the instalment previously due, or to pay that sum.

3. We acquiesce in the doctrine, that as a man binds himself so he is bound, but no farther. Admit that in the act of sale, Dawson acknowledges to have received all the objects sold and described in the act, and the sale of the bank stock, as between the parties, was complete, without the transfer on the books of the bank ; yet Dawson impliedly accepted the sale

under the conviction that the full term of twenty years was allowed him to pay the amount assumed to the bank, and not that the sum was then due with ten per cent. interest.

The defendant's evidence shows on Dawson's part, it was an engagement entered into through error, " and the information which would have destroyed that error was withheld by the defendant, and amounts to a fraud, and invalidates the contract. *Louisiana Code, article* 1826. It renders the contract voidable, and we can avoid it by our exception. *Louisiana Code,* 1876. This fact being proved by the defendant, we can avail ourselves of it, as well as if this error and fraud had been specially pleaded by us.

4. There was no delivery of the bank stock, and without that delivery or offer to deliver, the defendant was not bound to pay the price and is not in default. *Louisiana Code, articles* 2437, 1903, 1918, 2527, 2450, 2529, 2452, and 2466. *Pothier on Contract of Sale, No.* 476, *page* 291. *Story's Equity Jurisprudence, sections* 771, 776, 777, and 778. 12 *Louisiana Reports,* 375. It is delivery only in a contract of sale which transfers the property.

5. The condition precedent was on Madame Duplantier, to pay the instalment due on the 1st March, 1836, and redeem the forfeited stock, before Dawson could, from the nature of the case, perform his part of the obligation. It was, further, a condition precedent on the defendant, Duplantier, to offer to deliver the bank stock before she can compel a payment of the price. *Louisiana Code, article* 2529.

6. The cause has not been tried on its merits; if it has, the judgment must be reversed, if it has not, the case must be remanded. Substantial justice cannot be done without it.

7. The sheriff was incompetent to execute the order of seizure, being the son of the party proceeding in it. He was incapacitated on the ground of *interest,* being the forced heir, at least apparent, to the party having the entire interest in the case.

*A. N. Ogden, Brunot,* and *T. G. Morgan,* for the defendant and appellee, insisted that the plaintiff, by his contract, well knew of and assumed the payment of the defendant's loans, which she had from the Union Bank on the stock. It is so stipulated, and he has failed. If any instalments are due and not paid, it is the fault of the plaintiff; all the stipulations of acts to be done was on his part. He was to substitute other slaves for those reserved in the sale, before the transfer of the stock on the books of the bank could take place. Has he done it, or shown his readiness to perform?

2. The counsel for the plaintiff is mistaken in saying that there was no trial on the merits; it is shown by the record that the cause was fully tried on the merits, and decided on the merits.

The opposition is an answer to the petition for order of seizure and sale. *Rowlet* vs. *Shepherd,* 4 *Louisiana Reports,* 86: *Ibid.,* 292.

3. The party against whom an injunction has been obtained may compel the other to prove in a summary manner the truth of the facts alleged in his opposition, and the proper mode of proceeding is by serving on the adverse party a rule to show cause why his injunction should not be dissolved. 2 *Louisiana Reports,* 321.

4. Where a party fails to show sufficient ground to maintain an injunction, it must be taken as having been wrongfully obtained, &c. *Hudson* vs. *Plunket,* 4 *Louisiana Reports,* 524. On a motion to dissolve an injunction, the facts are not admitted as true, unless the rule had been taken to show cause for want of sufficient matter being alleged in the petition to authorize the injunction. *Jolly et al.* ads. *Hebert,* 5 *Louisiana Reports,* 50.

5. No replication being allowed, every averment in defendant's answer must be considered as denied, and the plaintiff is permitted to show by evidence that they are unfounded in law and in fact. 11 *Louisiana Reports,* 521.

6. The act of 1831 applies to the case. 10 *Louisiana Reports,* 519.

7. The law will presume no wrong where it has provided no remedy. There is no law providing for the service of process in civil cases, where the sheriff is related to either party in the suit. At common law, this officer had judicial powers; *here* his functions are only ministerial. See 1 *Blackstone's Commentaries,* 245, 343, 344; *Code of Practice, articles* 760, 772; 1 *Moreau's Digest,* 284; *Phillips' Evidence,* 36, 39.

*Bullard, J.,* delivered the opinion of the court.

The defendant having procured an order of seizure and sale against a plantation and slaves belonging to the plaintiff, upon which she had a mortgage, and privilege of vendor. The latter made opposition and obtained an injunction to stay proceedings, and prayed for a rescission of the sale of said property on the following grounds :

1. That the plaintiff had failed and neglected to comply with her contract, and to transfer to him the three hundred shares of stock of the Union Bank, which formed the principal motive for him to enter into the contract, and which stock was secured by mortgage on the said plantation, and a part of the slaves. He avers that he went to the Union Bank for the purpose of receiving such transfer, and to comply on his part with his engagements, but that the vendor failed to appear.

2. That the defendant is proceeding illegally to enforce her order of seizure, by causing the same to be executed by the sheriff of the parish of East Baton Rouge, who is her son and forced heir, and therefore incapacitated to act in the premises.

I. The contract of sale entered into by the parties, after enumerating the land and slaves, which formed the object in part of the contract, proceeds to say : " Moreover, three hundred shares of the capital stock of the Union Bank of Louisiana now owned by the said vendor, secured by mortgage in favor of said bank on the land and some of the slaves above described, which the vendor obligates herself to transfer to the said vendee. It is agreed that the vendor reserves a certain number of slaves, which were, among others, mort-

gaged to the bank, and the purchaser obligates himself to have the mortgage on the same cancelled and annulled, and further agrees to put himself in the lieu and stead of the vendor, as regards said land, and to execute in favor of the bank, a mortgage on a number of slaves equal to those reserved by the vendor. The purchaser assumed to pay to the bank the balance due by the vendor upon her loan, as a stockholder.

The argument in this court has turned principally upon the construction of this part of the contract, upon the obligations of the parties resulting therefrom, and upon the question, whether there has been such a putting in default in relation to the transfer of the bank stock, according to the regulations of the bank, as to entitle the purchaser to the remedy he seeks. On the part of the plaintiff in injunction, it is argued, that even admitting the act of sale is sufficient evidence of a sale of the stock as between the parties, yet as relates to the bank itself and to third persons, a formal transfer on the books of the institution was promised and is required. That until such transfer shall be executed there is no delivery of the stock, and that the purchaser has a right to withhold the price until the vendor has complied with her part of the contract. On the other side it is contended, that the first step to be taken in order to carry out the intentions of the parties, was to be taken by the purchaser ; that until he offered other slaves to be mortgaged to the bank, in order to release those which were reserved by the vendors, it was impossible for her, according to the regulations and by-laws of the bank, to make a transfer on its books, and that she could not be considered as legally in default, until such slaves had been substituted, to the satisfaction of the board of directors ; that she had an interest in having such substitution made, because her slaves were still liable to be sold for a debt no longer hers, but which the appellant had engaged to pay to the bank.

It appears to us that, according to the contract between the parties, the bank stock formed a part of the object of the sale, and that the vendor could not afterwards be regarded as a stockholder as between her and the vendee ; that if she had

EASTERN DIST.
*April*, 1840.

DAWSON
*vs.*
DUPLANTIER.

afterwards derived any advantage from the stock, she would have been accountable to him, and that the profits on the stock from the date of their contract belonged to him, saving the rights of third persons. Nothing remained to be done to render the contract binding on the whole world, but a formal transfer on the books of the bank, according to its by-laws. But the by-laws forbid such a transfer until the new mortgage shall have been accepted or found sufficient. If this were a direct action against Madame Duplantier for damages for the non-performance of her promise to transfer the stock, it appears to us clear that such action could not be maintained, without proof of at least a readiness on the part of the purchaser, and an offer to perform what by the contract he was first bound to do, or at least to do simultaneously. She would not be permitted to make a transfer and to substitute another person in her place, until the bank should be satisfied with the new security, and until the vendee had first satisfied the board of directors, he would have no right to complain of a non-compliance, on the part of the appellee, with her part of the contract. If in such direct action the appellant could not recover damages without proof of putting in default, it is not easy to perceive how he can be permitted, by way of exception, to obtain either a rescission of the contract or to withhold the price, not of the bank stock alone, but of the lands and slaves. No time was fixed within which these mutual stipulations were to be performed. Either party might therefore claim an immediate performance, but only upon the terms and in the manner pointed out by law for the enforcement of similar reciprocal engagements. *Louisiana Code,* 1907 ; 6 *Toullier, No.* 609.

II. The second ground of opposition relates to the competency of the sheriff, who is the son of the defendant in injunction, and appellee. The Code of Practice makes it the duty of the coroner to act whenever the sheriff is interested in a cause. *Article* 772. We must take with great allowance all authorities from the common law, on this subject, for two reasons : First, that the sheriff in England is believed to possess, in some cases, a judicial discretion ; and,

Where the purchaser of a plantation and slaves under mortgage for bank stock, stipulates that the seller may reserve certain slaves and he will put in others, and assumes her obligations to the bank, he cannot claim a rescission of the sale on an exception to her right to proceed against the plantation and slaves for the price ; or damages in a direct action, on the ground that she (the seller) has not transferred the bank stock, until he puts her in default by showing a readiness and offer on his part to perform what by the contract he was first bound to do, or at least simultaneously.

When no time is fixed by a contract, within which the mutual stipulations are to be performed either party may claim an immediate performance, according to its terms, and in the mode pointed out by law for enforcing similar reciprocal engagements.

EASTERN DIST.
April, 1840.

DAWSON
vs.
DUPLANTIER.

A sheriff who is the nearest relation and son of one of the parties, is not incompetent to act and execute process in the case. It is a pecuniary interest alone that renders him incompetent.

A judgment by default cannot be taken by the plaintiff in an opposition and injunction to an order of seizure and sale. No answer is required; a rule taken by the adverse party to dissolve the injunction is equivalent to an answer; and such opposition and injunctions are to be tried summarily.

secondly, because his competency to act in particular cases does not depend wholly on his pecuniary interest. He is incompetent when, standing in certain relations towards the parties, on the ground of a supposed bias and partiality. The code, on the contrary, does not declare that officer incompetent on any other ground than interest in the cause, and we cannot suppose the legislature meant any other than a pecuniary interest. When persons standing in similar relations towards each other are declared incompetent to testify for or against each other, their incompetency is not supposed to depend on interest alone. This court has ruled, on the contrary, that the descendant cannot testify in a cause in which his ascendant is a party, even when called to testify against his own interest. Whether similar notions of public policy ought not to incapacitate sheriffs or other ministerial officers, when called upon to act in cases in which their parents or their descendants are interested, is a question for the legislative authority, which alone is competent to remove such an anomaly.

Our attention has been drawn to a bill of exceptions taken to the opinion of the court overruling a motion of the plaintiff and appellant, for a judgment by default, upon showing that the petition for injunction had been duly served, and no answer filed. The court, in our opinion, did not err. The petition for an injunction in this case was in the form of an opposition to an executory proceeding, and no answer is required by the code. A rule had previously been taken by the opposite party to show cause why the injunction should not be dissolved, on the ground that it had been wrongfully obtained. Such rule may be considered as equivalent to an answer. The refusal to allow judgment by default to be entered did not operate any injustice, inasmuch as a trial appears to have taken place, and no evidence offered by either party was rejected. Such oppositions and injunctions are to be tried summarily. *Code of Practice,* 741.

The counsel for the appellant contends that no trial has been had upon the merits. To this it may be answered, that on the trial of the various rules and counter-rules, with

which the record is incumbered, it does not appear that the court refused to admit any evidence offered by either party. Nor did the court err, in our opinion, in deciding that the rule taken to show cause why the injunction should not be dissolved, was to be considered as an assignment of the cause for trial on a particular day ; and that the petition for an injunction was to be regarded as an answer in opposition ; and that the plaintiff in opposition was called on by the rule to support the grounds of his opposition by evidence. Many of the questions of practice raised in this case have been substantially decided in the case of Williams vs. Duer, at the present term.

EASTERN DIST.

*April,* 1840.

The trial of a rule taken to set aside, and dissolve an opposition and injunction staying executory proceedings, is a trial on the merits, in which the plaintiff therein is called on to support the grounds of his opposition by evidence.

The judgment of the District Court is, therefore, affirmed, with costs.