Morphy, J.
This is an action brought by the heirs at law of the late Mary Keller, to annul and set aside a nuncupative will by public act, wherein, after making a legacy of $5000 to her sister Nancy Keller, and ordering the emancipation of two of her slaves, the deceased left the balance of her property to her Husband, James McCalop. A variety of points, or grounds of nullity have been presented by the counsel for the plaintiffs and appellants, of which we have deemed it necessary to notice only the following, which have been insisted upon at some length-in this court, to wit:
I. That Noland Stewart, one of the subscribing witnesses to the will, was the son-in-law of James McCalop, the principal legatee, and therefore incompetent. It is urged, that in order to determine who are competent witnesses to a will, reference must be had, not only to articles 1584 and 1585 of the Code, but also to articles 2260 and 2261, which treat of the competency of witnesses in general; and that therefore, Noland Stewart was an incompetent witness, both on the ground of relationship, and of interest. These several articles of the Code apply clearly to two distinct classes of witnesses, and establish for each different qualifications. The former point out those persons who cannot be witnesses to testaments, and the latter refer to those called upon in judicial proceedings, to testify to any fact or covenant. This distinction, which results from the very language of the Code, was taken in the case of Sigur’s Heirs v. Sigur, 12 La. 25, in which it was held, that the grand-father of a legatee in a. will, was competent to attest it. The general principle in relation to the capacity of a testamentary witness is, that all persons are capable, with the exception of those who are excluded by some express law. In the French jurisprudence as it existed before the adoption of the Napoleon Code, relationship however close to a legatee, was not a ground of incompetency to serve as a witness to a will. Pothier, Donations Testamentaires, chap. 1, art. 3, § 3. Merlin, Rep. verbo, Témoin Instrumentare, § 11, No. 111. *641 The law was modified in France on this subject, by article 975 of the Code, which prohibits either legatees, or their connections or relations to the fourth degree inclusively, from being testamentary witnesses ; but the Louisiana Code, art. 1585, has adopted the prohibition only as regards the legatees themselves; its silence as to their relations and connections shows, that they were not intended to be excluded by our law-givers. Hxpressio unius exclusio est alterius. In the case of Hebert's Heirs v. Hebert's Legatees, in 11. La. 364, to which we have been referred, the only point decided is, that a witness who does not understand the language in which a will is written, is incompetent to attest it, such a person coming within the purview of article 1584, and being in no better situation than the deaf, who are therein expressly excluded, because unable to understand the will, when read to the testator in their presence. There is nothing in the reasoning or language of that decision to justify the inference drawn from it, that the qualifications required by art. 2260, for a witness to testify to a covenant or fact, are also essential to a testamentary witness. In the late case of Uigur's Heirs v. Bigur's Legatees, this' court said,: “ It is true that witnesses to a testament by public act, must possess not only the qualities required for that particular act, but for notarial acts in general; but it does not follow that they must be competent as judicial witnesses in any controversy growing out of the will.” The same doctrine was recognized in the case of Waters v. Petrovic & Blanchard, 19 La. 592. See also 14 La. 28 and 15 La. 289, therein referred to.
II. That the will was executed on a Sunday, and not at the office of the notary public.
We are unaware of any law declaring, on pain of nullity, that the acts of a notary are to be passed at any particular place within the parish for which he is appointed. It is true, that the 5th section of an act approved the 3d of July, 1805, directs generally, that all notarial acts shall be executed at the office of the notary; but it provides at the same time, that, in case of sickness of a party or some other sufficient cause, the notary can pass them elsewhere. In the present case, the evidence shows, that the testatrix was confined to her bed, and her strength so much exhausted *642 that she could not have left her room. A subsequent law contemplates that notaries may pass acts out of their office, as well as in it, by providing that for the former' they shall be entitled to double fees. B. & C.’s Dig. 443. In support of the objection that the will was executed on a Sunday, art. 207 of the Code of Practice, has been relied on. It provides, that on that day, and certain others therein named, no citation can issue, no demand can be made, no proceeding can be had, nor suit instituted, &c. This enactment relates, in our opinion, only to judicial proceedings ; but it does not, we apprehend, prevent a citizen from marrying, or making any other contract on those days. It could hardly be contended, that an. olographic will cannot be validly made on a Sunday or any other day of rest; if so, why should a person unable to write, through ignorance or physical infirmity,, be deprived of the power of making a will on such a day, with the assistance of a notary ? In France, it is only notarial acts which partake of a judicial character, such as inventories, protests, judicial partitions, &c., which cannot be executed on a Sunday ; but it is otherwise with regard to wills, and to all other acts which are purely voluntary. Diet, de Droit Civil, verbo, Fete, Nos. 9 and 10; and 'verbo, Acte Notarié, § 3, Nos. 20 and 21. There is nothing in the Code of Practice, or in the act of the 7th of March, 1838, also relied on, which can authorize us to consider as null a will by public act, merely because it is executed on one of the days of rest therein prescribed. To avoid the will of the deceased on this ground, would be to pronoúnce a nullity not established by law, and for which there is no foundation in reason.
III. That the will does not sufficiently appear to have been read to the testatrix in the presence of the witnesses, nor to have been dictated by her at the time it purports to have been signed, nor to have been written as dictated, nor does it appear by whom it was read to the testatrix.
The clause of the will to which these objections apply, is in the following words, to wit: “ This last will and testament was so dictated by the testatrix, to me, the said notary public, by whom it was written as dictated to me, and then read ,to the testatrix, who declared to have perfectly understood it, and to persist therein, all of which was done in presence of the said attending witnesses.’ *643 The words, all of which, placed at the end of the sentence, clearly relate to each and every thing therein mentioned as having been done; to wit, the dictation of the will by the testatrix, the writing of it by the notary, the reading of it to the testatrix, and the declaration of the latter that she understood it. It was not necessary for the notary to use any particular, or sacramental expressions, to convey the idea that he had read the will to the testatrix in the presence of the witnesses. It is equally clear from the language used, that the will was written by the notary as dictated to him, and was then read by him to the testatrix. The relative whom refers to the antecedent notary, and the words, by whom, clearly relate to the second verb <! read” as well as to the first “ written.” This construction, which is called for by the laws of grammar, is at the same time in accordance with that rule of interpretation which requires an instrument to be construed, llut res magis valeat quam pereat.” As to the objection, that it does not appear that the will was dictated by the testatrix at the time it purports to have been signed, it results from the whole context of the instrument, that it was executed in the only way it was physically possible that it could be done, in relation to the time at which the several things necessary to its completion were performed, id est, that it was first dictated, then written, afterwards read, and finally signed.
IY. That it does not appear from the will, nor is it therein observed, that all the formalities to the same were performed at one time, without turning aside to other acts, and without interruption. This very objection was urged in Featherstone v. Robinson, 7 La. 599. This court then said, that the Code of 1808 required indeed that all the formalities in the will should be complied with without interruption, and without turning aside to any other act; but that it did not require that mention of this circumstance should be made in the will.” Article 1571 of the new Code, prescribing the formalities of wills by public acts, is verbatim the same with the corresponding article of the old Code, p. 228, art. 92. But were this question presented for the first time, we would not have come to a different conclusion. Article 1571, after setting forth the different formalities to be complied with in making a nuncupative will by public act, says : “ Ex *644 press mention is made of the whole, observing that all these formalities must be performed at one time, without interruption, and without turning aside to other acts.” The express mention here ordered to be made, clearly applies to all the formalities just before enumerated, but cannot be understood to refer to the subsequent injunction of the law-giver to the notary, that there must be no interruption, or turning aside to other acts in the fulfilment of such formalities. Had the word observing been used to signify “ making mention in the will,” as is urged by counsel, the following part of the sentence instead of reading, “ that all these formalities must be fulfilled at one time,” ought to have read, “ that all these formalities have been fulfilled at one time,” &c. The same requirement is made by art. 1578 for the validity of a mystic will. On proof being made that it has not been complied with, in the making of either of these kinds of wills, they would be avoided; but to require the mention contended for in either, would be to add another formality to those required by law. This point was again made in Le Blanc v. Barras’ Heirs, 16 La. 82, in connection with the objection, that the will did not contain any mention of the residence of the witnesses in whose presence it purported to have been received. The case was decided on the latter objection, in relation to which the court said, that a nuncupative will by public act must bear on its face the evidence, that all the formalities required by law for its validity have been complied with, and that the fulfilment of these formalities, when not apparent from the instrument itself, cannot be established by testimony. A remark much to the same effect fell from the court, in Faulkner and wife v. Friend, Executor, 1 Rob. 48, in speaking of the difference between wills by public act, and those under private signature. The language used in these cases, to which we have been referred by the counsel for the appellants, is perhaps too broad for the point intended to be decided, to wit: that a will by public act must on its face establish its validity without recourse to evidence dehors the instrument, and that if any of the formalities required to be therein mentioned for its validity were omitted, they could notbe proved by testimony, to have been complied with. We conclude then, that the fulfilment of the prescribed formalities at one time, without *645 interruption or turning aside to other acts, is a condition which must be complied with, but the mention of which is not required, and that it is incumbent on the party who seeks to annul the will to show, that this condition has not been fulfilled. Far from the plaintiffs having made any such proof, the defendants have shown, that the will was made in the manner required by law. Being then of opinion, that this will is valid as one by public act, it is unnecessary to examine the several objections made to its being considered as a will under private signature.
It is finally urged, that the will, if valid, does not purport to convey or transfer to James McCalop any other than the parapher-nal and separate property of the testatrix, and not her interest in the community of gains and acquests, which existed between her and her husband. The language of the testatrix is : “1 bequeath to my sister, &c. $5000 in cash, to be paid to her at my decease, of the nett proceeds of my estate.” “ I give to my slaves, &c. their freedom, to take effect at the death of my husband, James McCalop and “I bequeath to my husband, James McCalop, all the rest or balance of my property, and that at my death,” &c. There can hardly be any room for construction in order to arrive at the intention of the testatrix. The word property, comprises moveables as well as immoveables, separate as well as partnership property, and all transmissible rights, whether dotal, paraphernal or community. After deducting the legacies, the testatrix gives to her husband the whole, and not a part of her remaining property. It is not even shown that she had any other separate property than the two slaves, and yet she bequeaths to her sister #5000. This sum eould only be paid out of her interest or share in the community property, the balance of which she wills to her husband.

Judgment affirmed.