EASTERN DIST.
*February,* 1838.

SEGUR'S HEIRS *vs.* SEGUR ET AL.

APPEAL FROM THE COURT OF PROBATES FOR THE PARISH OF IBERVILLE.

The grandfather of a legatee in a will, is a competent witness to attest and prove it.

Witnesses to a will must possess the qualifications specified for testaments 'by public act, and for notarial acts in general, but it does not follow that they must be competent as judicial witnesses in any controversy growing out of the will.

The notary may make a memorandum of the dictations of the testator, and write out the will from it; and if it is all done in the presence of the witnesses, and without turning aside to other matters, it is sufficient to give validity to the will.

This is an action by the heirs at law of Jean Laurent Segur, deceased, against Achille Segur, his universal legatee, to annul and set aside the will on various grounds, and to recover the succession property of the deceased.

The plaintiffs allege, that their said ancestor died in 1836, leaving neither ascendants or descendants, and making a will, in which, after bequeathing certain legacies, he appointed the defendant, Achille Segur, his universal legatee, giving him the seizin and possession of his estate, who has had the will probated, and ordered to be duly executed.

The plaintiffs further allege, that the said will is null and void, and pray that it be declared so, on the following grounds:

1. That it has not the requisite number of legal witnesses; one of them (Evariste Lauve) is the grandfather of Florentine Lauve, one of the legatees, and is incompetent to attest the will.

2. The testator was not of sound mind.

3. The will was not, in the sense and meaning of the law, *dictated* by the testator, and written *as dictated;* but on the contrary, it was written out by the notary, from a written

EASTERN DIST.
*February*, 1838.

SEGUR'S HEIRS
*vs.*
SEGUR ET AL.

paper which he had before him, and not from the mouth of the testator.

4. There was interruption and turning aside to other matters, without necessity, while the will was making.

On the trial, the notary and witnesses to the will were introduced. E. Lauve was offered by the defendant, and objected to by the plaintiffs, as incompetent, on the ground of consanguinity or relationship to one of the legatees.

The evidence showed, that the notary took down a memorandum on a piece of paper, of the dictations of the testator, and while at the door mending his pen, he spoke with the defendant and one of the witnesses. He immediately returned to the table, and wrote out the will from the written memorandum before him. The testimony showed clearly the testator was sound in mind.

The judge of probates declared the will valid, from which decree the plaintiffs appealed.

*Labauwe* and *Stacy*, for the plaintiffs.

1. The will is null for want of three legal witnesses. E. Lauve is incompetent, on the score of consanguinity or relationship to F. Lauve, one of the legatees, being her grandfather. The 1584th article of the code prescribes only absolute incapacities, and leaves accidental and relative ones to be regulated by the general provisions of law. All witnesses, as well to a will as in court, must be competent in law. *Louisiana Code, article* 2260.

2. Before a will can be executed, it must be proved, and it can only be proved by legal and competent witnesses. If all the witnesses to a will under private signature are dead, two credible and competent witnesses must be called to prove their signatures. *Louisiana Code, articles* 1647, 2260.

3. The olographic will must be proved by two witnesses, and how is their competency to be tested, if not by the general provision of law contained in article 2260? The probating a will is a judicial proceeding, which must be supported by the testimony of legal and competent witnesses. 5 *Martin*, N. S., 519. *Code of Practice, articles* 935, 943.

4. The article 2260 of the Louisiana Code, must apply both to instrumental and judicial witnesses, otherwise an act might be authentic, when passed before a notary and two *insane* or *infamous* persons as witnesses.

5. The article 975 of the Napoleon Code, describes the incapacities of those who cannot be witnesses to wills, yet there are other laws and other incapacities taken into consideration. See 5 *Toullier*, *article* 402. 9 *Duranton*, *articles* 113, 114, 115. 5 *Favard de Langlade*, *page* 505. 1 *Grenier, article* 243, *and pages* 563, 564. 12 *Sirey*, *2d part*, *page* 18. 6 *Merlin's Questions du Droit, page* 347, *verbo testament, article* 2, *section* 17.

6. This witness was clearly disqualified by interest and relationship, and as all notarial acts carry with them confidence, that what is contained in them is true, the notary and witnesses should be disinterested. Can it be possible that a witness is admitted to certify facts before a notary, when he cannot be received to support the same facts in a court of justice, under the solemnity of an oath? Witnesses partake of the duties of the notary in attesting wills. 8 *Merlin's Questions du Droit, verbo testament, article* 4, *section* 17.

7. This will was never *written as dictated*. The evidence shows, that the notary took a memorandum of the testator's dispositions, and left his bed-side to write the will at a table, from the notes taken, making alterations and changes therein, so that, in reality, the will was only written in part from the testator's dictations. It also appears that the notary propounded questions, and drew from the testator affirmative answers as dictations, which is illegal and forbidden by law. 9 *Louisiana Reports*, 470.

8. It is shown there was interruption in the proceedings; that one of the witnesses went out of the room while the notary was writing. This is not shown to have been necessary, and that the proceedings were suspended during his absence. This the adverse party was bound to show, or the interruption is illegal. 1 *Grenier, page* 552-3. *Le Nouveau Furgole, vol.* 1, *page* 15.

EASTERN DIST.
*February*, 1838.

SEGUR'S HEIRS
*vs.*
SEGUR ET AL.

*Ives* and *Mazureau, contra.*

*Bullard, J.,* delivered the opinion of the court.

This action was instituted to annul the testament of J. L. Segur, on several grounds ; but chiefly, that one of the witnesses was incompetent, being the grandfather of one of the legatees, that the will was not dictated by the testator, and that it does not appear that it was written by the notary himself.

The grandfather of a legatee in a will, is a competent witness to attest and prove it.

I. It is conceded, that Evariste Lauve, one of the testamentary witnesses, is the grandfather of Florentine Lauve, who is entitled under the will, to a specific legacy.

The counsel for the appellants contends, that although the witness in question was not laboring under any *absolute* incapacity, according to article 1584 of the code, and though he would not be excluded as relatively incapable under the next article, not being himself a legatee, yet, inasmuch as he could not testify in a court of justice in a case in which his grandchild might be a party, he is necessarily incapable of acting as a witness to a testament by public act, in which she has a direct interest as legatee.

Witnesses to a will must possess the qualifications specified for testaments by public act, and for notarial acts in general; but it does not follow, that they must be competent as judicial witnesses in any controversy growing out of the will.

The authorities cited from French commentators, do not appear to us to sustain the counsel in this position. It is true, that witnesses to a testament by public act, must possess not only the qualities required for that particular act, but for notarial acts in general ; but it does not follow that they must be competent as judicial witnesses in any controversy growing out of the will. Witnesses to authentic acts, other than testaments, must be free males, and at least fourteen years of age. Their attestation proves nothing but *rem ipsam*, and although they may have such an interest in the subject matter of the contest, or stand in such relation to either or both of the parties, as to render them incompetent to testify in a suit at law, yet it is not believed that the instrument would be the less authentic. The article of the code above referred to, having declared that the instituted heir or legatee shall also be incompetent to serve as witnesses to a testament,

it appears to us the maxim applies *" expressir unius exclusio est alterius."*

II. In relation to the dictation of the will, and the manner in which it was written, it appears to us there was substantially a compliance with the requisites of law as expressed by us in the case of Chardon's heirs *vs.* Bongue, 9 *Louisiana Reports*, 458.

It is true, the notary first noted on a memorandum the different bequests, and afterwards wrote them out; but the whole was done in presence of the witnesses, and in truth, most of the will was twice written, according to the dictation of the testator. Nor does it appear to us that there was any such interruption or turning aside to other acts, as would vitiate the act.

III. We are of opinion, that the testament itself sufficiently shows that it was written by the notary. The expression to which our attention has been called, is as follows : " *Ce testament, a été ainsi dicté par le testateur au notaire soussigné et écrit par lui,*" &c. According to a grammatical construction of the sentence, the pronoun *lui,* refers to the last antecedent, *the notary;* but if we even admit that it is doubtful, it must refer either to the notary or the testator himself, and on the last supposition the testament would be valid, as olographic.

It is, therefore, ordered, adjudged and decreed, that the judgment of the Court of Probates be affirmed, with costs.

EASTERN DIST.
*February,* 1838.

SEGUR'S HEIRS
*vs.*
SEGUR ET AL.

The notary may make a memorandum of the dictations of the testator, and write out the will from it; and if it is all done in the presence of the witnesses, and without turning aside to other matters, it is sufficient to give validity to the will.