No. 13,863.

. SUCCESSION OF FRANCOIS CROUZEILLES.

SYLLABUS.

1.　Though a person execute a last will and testament during an attack of *delirium tremens,* it will be maintained, if executed during a lucid interval.

2.　Where a notary public in writing a last will, understanding the name as given to him by the testator to be "Grouzeilles," instead of "Crouzeilles," so writes the name by mistake throughout the instrument, and the testator merely affixes his mark as his signature, evidence is admissible to prove said mistake, and on proof of said mistake and of the fact that the party making the will was really Francois Crouzeilles, the will will be maintained. The mistake was, besides, evidently the result of *idem sonans*.

3.　When the recitals made in the will are of character such as to leave no doubt in the mind of the court that the testator did make to the notary, in presence of the witnesses, the declaration required to be by him made, by Article 1579 of the Civil Code, the will will be maintained. It is not the duty of courts to refuse carrying out the wishes of deceased parties by pushing the requirements of the law to extremes.

4.　Parties claiming to be heirs of a deceased person and to be placed in possession of his estate, must prove their heirship. (C. P. 1003; Solari vs. Barras, 45 Ann. 1132.)

A PPEAL from Civil District Court, Parish of Orleans—*Theard, J.*

*A. E. & O. S. Livaudais* and *Frank McGloin,* for Plaintiffs, Appellants.

*George Montgomery,* for Defendants, Appellees.

STATEMENT OF THE CASE.

The opinion of the court was delivered by

NICHOLLS, C. J. Francois Crouzeilles died in the city of New Orleans on the 5th day of February, 1899. On the 7th of the same month Juste Fontaine, Jr., presented a petition to the Civil District Court

for the parish, in which he averred that Francois *Grouzielles* had died
n that city on the 5th of February, 1899, leaving a last will by public
act (a copy of which he annexed to his petition), by which petitioner
was appointed testamentary executor, and that he left neither ascend-
ants, descendants nor other forced heirs. He prayed that said will be
probated, registered and executed; that letters testamentary issue to
him upon his taking the legal oath, and that an inventory be taken
before Barnett, notary.

The will was probated as that of *Francois Grouzeilles* and an inven-
tory ordered to be taken as prayed for. The succession was opened
as that of *Francois Grouzeilles* .On the 12th of April, on the sugges-
tion of counsel of the testamentary executor that in opening the suc-
cession the name of the deceased had been inadvertently spelled "Grou-
zeilles" instead of "Crouzeilles," his real name, which error had been
caused by a clerical error of the notary who drew up the will, which had
been probated, by writing the name of the testator "Grouzeilles," the
court ordered the title of the succession to be changed so as to make it
be entered as the succession of *Francois Crouzeilles.*

The inventory taken by Barnett was taken as that of Francois Grou-
zeilles, but the various properties therein were referred to as those of
Francois Crouzeilles. The letters testamentary issued as issued under
the will of Francois Crouzeilles. Subsequent proceedings were made
in that name.

In November, 1899, Pierre Lafon, Placide Bernis, Lucien Crouzeilles,
Jeanne Plante, wife of Jean Bardel, and Marcelline Crouzeilles, wife
of Phil Leger (the latter a resident of the State of Illinois and the
others of the Republic of France), presented a petition to the Civil
District Court for the Parish of Orleans, in which they averred that
they were the only cousins in nearest degree of Francois Crouzeilles,
who had died in New Orleans, without forced heirs, and without any
brothers or sisters or descendants from them; that a document had
been filed and on *ex parte* proceedings it had been probated as the will
of Francois Crouzeilles; that Juste Fontaine, Jr., and Anna Schilder,
claiming to be the widow of the deceased, claimed said will to be the
last will of Francois Crouzeilles; that said will does not purport on its
face to be that of Francois Crouzeilles, and these parties could not
by attempted proofs *dehors* the instrument contradict, vary or in any
wise alter or add to said alleged testament, particularly by endeav-
oring to show that the name of the testator was wrongly given to the
notary.

Reserving said preliminary and peremptory objection and complaint, and only in the event of same being held inadequate and its being proven with the court's authorization, that it was, in fact, Francois Crouzeilles who appeared and executed said instrument, under a wrong name, and with full reservation of the issue so reserved, petitioners alleged and pleaded:

That said pretended last will and testament was null, void and of no effect, for the following reasons:

1. That Francois Crouzeilles going for peace' sake through the form, never intended to make a last will or to divest his heirs of the blood of their right of inheriting from him.

2. That said alleged last will was never signed by Francois Crouzeilles, though he was, as petitioners believed and alleged at the time, able to have affixed his signature, had he so desired.

3. That said instrument does not set forth the name of said Francois Crouzeilles, and therefore cannot stand for the last will and testament of said deceased.

4. That said alleged testament does not recite the name of the testator or of any testator.

5. That even if said deceased was incapacitated to actually sign with his own hand said instrument, yet there is not the legal substitute for a signature, as in such case the law exacts; the name of him declared being false and not the equivalent of his real signature.

6. That the said pretended testament does not distinctly set forth, as the law requires, a declaration on the part of the testator of his inability to sign.

7. That said instrument does not in any view or event express truly the reason why said testator did not sign the same.

Petitioners averred that they were entitled to have the *ex parte* proceedings or order vacated and to have said pretended last will decreed null, void and of no effect, and to be recognized as the only heirs of said deceased Francois Crouzeilles, and as such to be placed in possession of his entire estate.

They averred that the testamentary executor and widow had been in possession since the death of the deceased of the property left by him, and they should be condemned *in solido* to restore the same to them, with fruits and revenues.

The petition closed with a prayer in conformity with its allegations.

Defendants excepted to plaintiffs' demand, on the grounds:

1. That it was too vague and indefinite to permit of their safely answering it, in that it does not show how alleged relationship of plaintiffs to decedent is established, or if at all, said plaintiffs are heirs in the same degree and for equal parts or not.

2. It does not affirmatively show any interest in the plaintiffs to attack the will.

3. It sets forth no cause of action.

4. The will cannot be attacked collaterally in the same action; a direct action must be instituted and regularly allotted.

5. Plaintiffs' demand is premature.

These exceptions were overruled. Plaintiffs, by supplemental petition, attacked the testament, on the ground that the testator had been for some time before, and was at the time of the execution of the will, and continued thereinafter, to be insane and absolutely incapable of making any testamentary disposition whatever or of performing any rational act.

Defendants, after pleading the general issue, admitted the execution and probating of the will referred to in the petition. They averred that the notary, misunderstanding the testator, by reason of the simularity in pronunciation, wrote the name *"Grouzeilles"* instead of *"Crouzeilles,"* notwithstanding the fact that the will which was in due form, was dictated by *Francois Crouzeilles,* the deceased. They alleged that the name of the deceased had been misspelled upon other occasions and that the testator's real name was *Francois Crouzeilles,* he being the same person whose succession was being administered in the Civil District Court by Juste Fontaine, Jr., as testamentary executor, and the same person who died on the 5th of February, 1899; and that there was no such person as Francois Grouzeilles.

The District Court rendered judgment rejecting plaintiffs' demand at their costs, and they appealed.

### OPINION.

We do not think it has been shown that at the time of the execution of the will, which has been attacked in this litigation, the testator was insane. It is true that he died either during or as the result of an "attack of *delirium tremens,*" but it is established that there were lucid intervals during such attacks and the testament seems to have been executed during one of them. We can reach no other conclusion under the testimony given by the notary and the witnesses who were present

at the time. The attending physician was not then present and he declined giving any opinion of his patient's mental condition at that moment. It is suggested that one of the witnesses should not be believed for reasons assigned. Waiving a discussion as to whether the facts on which this suggestion is made were proved or affirmed, and whether they would have carried with them an impeachment of his testimony, the fact remains that the testimony of the others is absolutely uncontradicted.

It is urged that if the testator was sane he deliberately gave to the notary a name other than his real name, and therefore "it is manifest that he was acting against his true inclinations," in other words, the will was made under duress of some kind. There is not a word to support that position other than the fact itself that the testator's name is given throughout as "Grouzeilles" instead of "Crouzeilles." The testator did not himself write out his name to the will as "Grouzeilles"; he simply attached to it his mark, the notary himself placing the mark between the words "Francois" and "Grouzeilles" ("Francois X Grou-
                                                his
zeilles"). It is very evident that the notary, who did not know the testator, understood the name given to be "Grouzeilles," not "Crouzeilles." This was a mistake easily to be made under the rule of *"idem sonans."*

The testimony establishes beyond the possibility of a doubt that the party who executed the will was Francois Crouzeilles and not Francois Grouzeilles, and that there is no such person as Francois Grouzeilles. We think evidence to prove that fact was legally admitted. The will attacked closes with the words:

"In faith whereof said testator, said witnesses and I, said notary, have each subscribed our names in presence of each other, on the day and date, and at the time of taking said last will and testament, the said testator declared unto me, notary, in presence of said witnesses, not being able to sign his name on account of nervousness, has made his mark."

Opponents assert that these recitals are not a compliance with the requirements of Article 1579 of the Civil Code, which declares that "the testament must be signed by the testator; if he declares that he knows not how or is not able to sign, express mention of his declaration, as also of the cause that hinders him from signing, must be made in the act."

It is insited that the wording of the sentence should have been. *"Having been asked to sign, the said testator declared to me, notary, in presence of said witnesses, that he could not do so,* and not being able to sign his name on account of nervousness, *he* has made his mark."

We think that in France at one time the notary writing out *a will was required to call upon the testator to sign his name* and required to state that fact and the testator's declaration in answer thereto, but that requirement no longer continues there, and is no requirement here. It is quite possible and, probable that as a fact a testator's declaration is usually responsive to some question or demand of the notary, but neither of those facts are required to appear in the act. All that is required by the law is that the declarations of the testator should appear. Whether made of his own motion or in answer to something said by the notary, the law considers immaterial.

Opponents refer the court to Shannon vs. Shannon, 16 Ann. 8; Succession of Whittington, 26 Ann. 89; Succession of Carroll, 28 Ann. 388; Succession of Sparks, 12 Rob. 39; Succession of Vidal, 44 Ann. 45, and Succession of Marqueze, 50 Ann. 68.

They concede "that no particular form of expression is sacramental in the making of this necessary declaration, but insist the language of the notary must indicate clearly and unambiguously the fact that the testator himself has announced his inability to sign, that though immaterial *in what words* that proof is furnished, still some words must be used from which the fact may be inferred that the formality was com - plied with, and such inference should *be so conclusive and so certain as to leave no doubt in the mind of the court,* that implication cannot be resorted to unless at least it be an implication necessarily involved in the meaning of the express words used."

They say that this court, in the Succession of Marqueze (50 Ann.), quoted approvingly from the French authorities to the following effect: "Du reste il n'y a pas ici des expressions sacramentalles; tout ce que exige la loi c'est que la mention *est concue de telle maniere qu'elle contienne une affirmation* non equivoque de l'observation de chacune des formalitiès."

They insist that the observance of the legal formalities required by law in the drawing up of wills should be rigidly enforced. This last contention is true, but there is a limit to this doctrine beyond which we should not pass. It is not our duty to refuse the carrying out of

the wishes of deceased persons by pushing the requirements of the law to extremes.

The recitals of the will in this case as made by the notary are of character such as to *leave in the mind of the court* no doubt that the testator did make "to the notary in presence of the witnesses" the declarations which the law required should be made by him and mentioned by the notary. There was unquestionably a declaration made by the testator to the notary in presence of the witnesses, and that declaration undoubtedly was that he was not able to sign his name on account of nervousness. The omission of the word "he" after the word "nervousness" and before the words "has made his mark" would have made the sentence more complete, but leaves it none the less sufficiently clear and explicit to satisfy the mind of the court that the requirements of the law were carried out.

We have entered into an examination of the issues raised by the parties with the object of closing this litigation. The parties who attack the will claim to be the nearest relatives and the legal heirs of the deceased. That fact, though called in question by the defendant in his exceptions, was not established on the trial. The only attempt on the part of plaintiffs to establish heirship was through an offer to introduce in evidence what is styled an act *"de notoriétè,"* which was not allowed to be introduced on the ground that it was *hearsay evidence.*

Plaintiffs *reserved* a bill of exceptions to this ruling and the right to attach the act to the bill, but no bill seems to have been made out.

Plaintiffs contend that they were not put upon proof of their heirship under the pleadings, but we think they were.

Plaintiffs' action is to be recognized as heirs of the deceased, and to be placed in possession of his succession, accompanying this demand by an attack upon a will which he had executed.

Articles 1001 and 1003 of the Code of Practice declare "that the heirs or other persons claiming shall file along with their petition all such proofs as may go in support of it to the end that the curator or testamentary executor may be made acquainted with them." *"If, from the examination of the testimony produced in support of the prayer, the judge discovers that the heirs are entitled to the succession, he shall put them in possession,"* etc., etc.

In Solari vs. Barras, 45 Ann. 1132, this court declared that the "authority of the heir is not representative, but is connected with a

part of the right of action to recover and must be proved, being intimately connected with the claim."

We reaffirm this declaration. Plaintiffs had ample opportunity to present their proofs.

For the reasons assigned, it is hereby ordered, adjudged and decreed that the judgment of the District Court be affirmed.