PROYOSTY, J.
[1] The de eujus made her will in nuncupative form by public act, and this suit is brought to annul it.
Plaintiff and his sister and two brothers are the grandchildren and sole legal heirs of the de eujus. By two olographic wills of earlier date, he was made testamentary executor and given an extra portion. By this will, the estate is given to him and his coheirs share and share alike, and some one else is appointed executor. Defendants contend that these previous wills are spurious; and that therefore he is without pecuniary interest, or quality, for maintaining this suit. The genuineness of these previous wills is abundantly established; but, if it were otherwise, plaintiff would still have a pecuniary interest in procuring the annulment of that *198 clause which appoints an exeautor with seisin; and also of another clause which designates a particular lawyer and notary to do the law and notarial work incident to the settlement of the estate.
[2] One of the grounds of nullity alleged by plaintiff is that the de cujus could not speak the English language, in which the will is written, but only German.
She came to this city frosn Germany in 1853, at the age of 23, and lived in this city up to the time of the making of this will in 1912. The date of her marriage to Mr. Brand is not shown; nor whether Mr. Brand spoke German, or English only. He kept a saloon, and, after his death, in 1879, she continued the business for some time; how long is not shown, except that one witness says many years. She was a woman of some education, judging from the good, and apparently fluent, hand she wrote. Her sister, who came from Germany at the same time that she did, says that she understood and spoke English as well as she herself did; and this sister, as is evident from her testimony in this case, could certainly understand and speak the language well enough to make a will. Numerous witnesses testify that the testatrix could speak English, while others say she could not. It is quite possible that, speaking only broken English, she, a person of some education, may have been reluctant to use this language in her intercourse with the latter witnesses; whereas it is entirely improbable that all these other witnesses have perjured themselves in this case in which they are not personally interested. Her grandchildren, living with her, did not speak German, but only English; hence she and they must have spoken English to each other; and, living together, their conversations must have been frequent. Years ago, she made another will in English, before another notary, and other witnesses.
[3] Another ground of nullity is that the requirement of the Code (Civ. Code, art. 1578) that the will “must be dictated by the testator and written by the notary as it is dictated” was not observed,
On the day before the making of the will, she sent for the lawyer and notary who is named in the will for having charge of the law and notarial work incident to the settlement of the estate, and this lawyer went to her house accompanied by a notary. The lawyer spoke German well; the notary only imperfectly. They and the old lady had a conference over the making of her will, in the course of which all the dispositions that the will was to contain were agreed upon, and it was understood that the notary should draw up a memorandum of them to be used the next day by the testatrix in making the will. The next evening, the same two repaired to her house with three witnesses, and the will was made, in a room of her house, she, an old woman 82 years old, feeble in body, and in poor health, but of good mind, seated in a chair; and about an hour and a half was spent in the making, she assisting herself by occasional reference to the memorandum which the notary had prepared for her. The dispositions of the will were not dictated by the old lady of her own impulse; but were elicited from her by questions put by the notary, and answers, on her part, to the questions; and the notary did not write down the questions and answers as spoken, but wrote down their substance, in what he considered to be a more appropriate form, or in notarial style. This mode of proceeding has been held not to violate the codal provision of dictation, where the questions are not of a character to suggest the answers.
“With respect to the principal point in the cause, to-wit, whether the will was in fact dictated by the testator, * * * we will premise what we have to say on that subject by remarking that the objection on the ground that the testator, was interrogated by the notary resolves itself mainly to one of suggestion. The notary, by asking a question as to what disposition the *200 testator wishes to make,- might so shape his inquiry as to suggest a particular disposition, and might amount to an artful insinuation, spoken of by some of the French authorities cited in the argument.” Chardon v. Bongue, 9 La. 458-470; Landry v Tomatis, 32 La. Ann. 119; Hennessey v. Woulfe, 49 La. Ann. 1392, 22 South. 394.
In the instant case, the notary asked the questions:
“What is your name? Whose widow are you? How many times have you been married? How old are you? How many children were born of your marriage? Are any of them alive? What are their names? What are the names of the children of Mrs. Cline? How old are they? Who will get your property?”- Or: “What do you intend to do with all your property ? Whom do you want to be your testamentary executor? Do you want to give your testamentary executor full charge of your estate? Do you want to give bond or security? Do you want to revoke all other wills? Do you want any body appointed to open your succession, and look after that, any of it? Whom do you want to have charge of the matter after your death? Do you want him to have charge of all the legal and notarial work in the opening, settlement, and partition of your estate?”
And, as each of these questions was separately put and answered, the notary wrote down what he took to be the substance, in notarial style, connectedly, as follows:
“My name is Mrs. Maria Anna Riebel, widow of Henry Brand, deceased. I have been married but once. 1 am SI years of age. There were three children, issue of my said marriage, all of whom are dead, two were never married, and third child named Magdalena Brand, widow of William Julius Cline, also died, leaving four children issue of her said marriage, namely, Chauncey Cline, now aged 23 years, Ethel Cline, wife of Leslie H. Zimmerman, aged about 20 years, Leonard Cline, aged about-17 years and Ludwig Cline, aged about 11 years.
“In the event of my death, I give and bequeath unto my aforesaid grandchildren, share and share alike, all property of which I may die possessed, be the same what it may wheresoever situated and lying.
“I nominate and appoint William Spitz of this city, to be the sole testamentary executor of my estate with full seizin thereof and without bond.
“I desire and direct that Mr. Edward W. Rischow, attorney at law of this city, shall have charge of all legal and notarial work in the opening, settlement and partition of my estate.
“I revoke and annul all wills and codiciles to wills which I may heretofore have made, holding this alone as good and valid.”
[4] There can be no serious dispute but that the notary correctly put down the substance of the answers; the only question is as to whether the questions were not suggestive. None of them appears to us to have been so, except perhaps those relative to the testamentary executor. These may be said to have suggested that an executor be appointed; and that he be given full charge of the estate.
We are of opinion, however, that less caution in avoiding suggestiveness need be exercised in the questions relating to whether an executor should be appointed, and whether he should have seisin, or give bond, than in the questions relating to the disposition to be made of the property, and who should be chosen as executor; there must be an executor to carry out the will, and the will should contain some direction in the matters of seisin and bond; and if, in calling the attention of the testator to these matters, some unintentional element of suggestiveness enters into the questions, there can be no great harm. And especially can this be said in a case like the present, where the testator was an intelligent person, of education, and had made previous wills app6inting executors and giving them seisin and dispensing them from giving bond, and, while dictating, held in hand a full memorandum of what the contents of the will should be.
Our conclusion is that the requirements of dictation and writing as dictated were, complied with.
[5] When asked as to the appointment of an executor, the testatrix did not understand the word; whereupon the notary used in his question the German equivalent “testamentovollsehecker.”
This was not a dictating of the will, or of any part of it, in a different language from that in which it was written down; but was simply the explanation of a word.
The notary explained in the same way the *202 word “seisin” as meaning to have possession of the estate. Explanatory conversation while a will is being made is not objectionable.
The contention that the witness to the will, Ebert, could not understand the English language, is disproved by his own testimony taken in English in this case.
Judgment affirmed.
O’NIELL, J., takes no part.