LECHE, J.
Louis M. Bihm had been married to Josephine Lydia McClelland, and of this marriage were born four children, who are plaintiffs in this suit.
After the death of his first wife, Bihm was remarried to Frances Wilkins. Six children were born of the latter marriage. Bihm died February 21, 1917, leaving a last will and testament couched in the following terms:
“State of Louisiana, Parish of St. Landry.
“Be it known that on this 4th day of March, in the year of Our Lord one thousand nine hundred and eleven, before me, Stanislas J. Gosselin, a notary public duly commissioned, qualified and sworn in and for above parish and state and in the presence of John L. Cannon, Theo. C. Dejean and Elwood Anselm, competent witnesses residing in the parish of St. Landry, state of Louisiana, at the residence of Lewis M. Bihm, who resides at Plaquemine Bidge, St. Landry parish, Louisiana, personally came and appeared the said Lewis M. Bihm, who declares unto me, notary, and in presence of the aforesaid and undersigned witnesses that he desires to make his last will and testament. And on said day and date and at said place and in presence of said witnesses and me, notary, the said Lewis M. Bihm, testator, dictated to me, notary, and I wrote down as he dictated as follows, to wit:
“Je donne, devise et legue á mon épouse Frances Wilkins la portion disponible de mes propriétés que je possederais a ma mort et l’usufruit de la balance de mes propriétés. J’appointe ma dite épouse exeeutrice testamentaire de ma succession a ma mort et lui dispense de fournir aucun cautionnement.
“And on said day and date at said place and in presence of said witnesses I, notary, read over to said testator the above-written testament, who declared it was his last will and testament. And on said day and date at said place and in presence of said witnesses, all-of the above having been fulfilled at one time without interruption and without turning aside to other acts, the said testator signed the same in my presence and in presence of the undersigned witnesses.
“Thus done and signed at the residence of said testator at Plaquemine Bidge, St. Landry parish, Louisiana, on the day, month and year first above written and in presence of said witnesses and me, notary. Elwood Anselm one of the witnesses not knowing how to write signs by making his ordinary mark.
“[Signed] Lewis M. Bihm.
“John L. Cannon..
“Theo C. Dejean, his
“Elwood X Anselm, mark.
“S. J. Gosselin, Notary Public.”
On February 27, 1917, the above will was ordered to be registered and executed, and Mrs. Frances Wilkins Bihm, in accordance with the provisions of the same, was at the same time confirmed as executrix.
*263 Plaintiffs attack the validity of said will on the following grounds:
(1) Because the same does not declare that the notary public officiating at the making of the same received the dictation of the will from the testator and wrote the same down as he dictated in the presence of the witnesses to the same.
(2) Because one of the witnesses to the said will, Elwood Anselm, did not sign his name to the same, and the disability or impediment which prevented him from signing said will is not stated as the law requires in the proces verbal of the notary public.
(3) Because the said witness’ name was signed by the officiating notary public, whereas the law requires that in a will of this character, if one of the witnesses is unable to sign from infirmity or lack of knowledge, his name must be signed by one of the other witnesses to the will; and therefore the said notary public in any event was without any power or authority to sign the name of the witnesses to the will.
(4) Because the will not only undertakes to bequeath to the legatee, the said Frances Wilkins, the disposable portion of the testator’s property, but proceeds to undertake to vest her with the usufruct of the balance of his property. Testamentary dispositions are not permitted by law and this renders the alleged testament null and void in toto.
(5) Because the said purported last will and testament was not dictated by the testator in the language used by the notary, nor did the testator convey to the notary in the presence of the witnesses and at the making of the will the provisions and dispositions which the notary undertook to incorporate on behalf of the testator in said purported last will and testament; that he never dictated in the presence of the witnesses that he gave and devised to his wife, Frances Wilson (sic?), the disposable portion of his property; that he never dictated to the notary that he bequeathed her the usufruct of the balance of his property; that he never dictated to the notary that his said wife should be appointed testamentary executrix of his succession with full power to take possession of the same, and dispensing her from furnishing security as testamentary executrix; and hence said purported last will and testament for this reason alone is null and void in toto.
Plaintiffs’ first ground of attack is that the notary does not declare that he received the dictation of the will and wrote the same down as dictated in the presence of the witnesses. The act evidencing the will states that the testator declared to the notary in the presence of the witnesses, three in number, that he desired to make his last will and testament, and in the presence of said witnesses the testator dictated to him, the notary, and he wrote down as dictated, etc. The article of the Code (1578) says:
“The nuncupative testaments by public act must be received by a notary public, in presence of three witnesses, etc. This testament must be dictated by the testator and written by the notary as it is dictated.”
The word “received” as used in the law, refers to the previous words “nuncupative testaments by public act,” and it means “the dictation of the will in the presence of the witnesses and the reading of the same to the testator and the witnesses in the presence of each other.” Succession of Saux, 46 La. Ann. 1426, 16 South. 364. It thus appears from the will itself that this formality was complied with, and that the will was received in the manner required by law.
Plaintiffs’ second and third objections in substance, are: (a) That Anselm, one of the witnesses, did not sign his name to the same; (b) that the notary did not state in the procés verbal the disability or impediment which prevented him from signing; (c) that the notary had no right to sign the name of this witness; and (d) that his name should have *265 been signed by one of the other witnesses.
The article of the Code upon that subject (article 1580) reads as follows:
“This testament must be signed by the witnesses, or at least by one of them for all, if the others cannot write.”
Taking up plaintiffs’ objections in the above-stated order, it is clear from the language of the law that it is not necessary that ail three of the witnesses to a nuncupative will by public act should know how to write; for, while the first part of the article requires that the testament must be signed by the witnesses, that statement is qualified by the last provision, which says that it must be signed by at least one of them. ■ We next inquire when may it be signed by only one of them, and - the answer then follows, viz.: When the others cannot write. The law itself then recognizes that a person who cannot write may be a competent witness to a will. The words “cannot write” are not limited to persons who are prevented by physical infirmity from writing; for, if we consult the French text of the Code of 1808, we find (translating literally article 94, § 2, c. 6):
“The testament ought to be signed by the witnesses, or at least by one of them for all if the others know not how to sign.”
The English version of the same article in the Codes of 1808 and 1825 reads as it does in the Code of 1870. In giving effect to the provisions of the Code of 1808, we find in Chretien v. Théard, 2 Mart. (N. S.) 582, that—
“Where the expressions in the French text of the Code of 1808 are more comprehensive than those in the English, or vice versa, the more enlarged sense will be taken, as thus full effect will be given to both clauses.”
Interpreting the articlé 1580 of the present Code according to that rule, the words “cannot write” include persons who know not how to sign as well as persons who know how to sign, but are prevented from doing so by some physical infirmity. From these premises we conclude that, although Anselm did not know how to write, his illiteracy did not disqualify him as a witness, and therefore the fact that he did not actually sign his name with his own hand does not of itself invalidate the will.
The next objection, that the notary did not state in the procés verbal the disability or impediment which prevented Anselm from signing, is not supported by the requirements of the Code. We find no provision in the law requiring that the cause which prevents a witness from signing should be stated by the notary, under pain of nullity of the will.
The cause preventing a testator from signing should be declared by the testator himself and recited in the procés verbal, under article 1579, but this provision does not apply to the witnesses. The notary, however, did do that, which although not mandatory upon him, was proper in order to show on the face of the act and to explain why Anselm had not signed his name with his own hand. He stated that Anselm did not know how to write, and that is sufficient.
The last objections of plaintiffs (c) and (d), are the really most serious questions in this case.
It must be remembered that the formalities prescribed by the Code in the confection of wills in the nuncupative form'by public act are sacramental. It has always and uniformly been held that courts have no right, under the pretext that they serve no useful purpose, to ignore them. “Formalities in a will are matters of strict law, and it is null if they be not complied with, however strong the moral evidence that it truly embodies a testator’s last dispositions.” Succession of Mary Carroll, 28 La. Ann. 391. But, where the language in which some prescribed formality is ambiguous and susceptible of various interpretations, it is nevertheless nec *267 essary for the court to inquire into the reasons which may have prompted the legislator in its enactment in order to properly construe its phraseology.
Referring again to the article 1580, O. C., herein already quoted, the will must be signed by the witnesses or at least by one of them for all, if the others cannot write. The ground of nullity urged by plaintiffs to the effect that the notary had no authority in law to write the name of the witness Anselm and to permit the witness to affix his mark thereto between his given and his family name, and that Anselm’s name should have been written by one of the other witnesses, rests for its soundness upon the construction which should be given to the words “for all” in article 1580. Plaintiffs’ contention to the effect that the notary is not given authority to sign the name of any witness is very apparent from the mere reading of the law, but the other contention, that the name of the witness who cannot write should be signed by another witness, is by no means so easily deducible from the context of that law. The phraseology of that article stands to-day just as it was adopted in the Code of 1808. It is not copied either from the French Code or from the Partidas, and, strange to say, has never, so far as we know, been construed by this court. The Spanish law at that time was that each of the witnesses ought to write his name at the end of the will; and if one of them should not know how to write, either of the others may do it for him at his request. -Moreau & Carleton’s Partidas, partida sixth, title 1, law 1. The corresponding law in France, art. 974, C. N., says that the testament should be signed by the witnesses: and nevertheless in the country, it will be sufficient if one of the two witnesses sign, if the testament is received by two notaries, and that two of the four witnesses sign, if it is received by one notary.
Thus it was that under the Spanish system the name of the illiterate witness could be signed by the hand of one of the educated witnesses, while under the Frenclf system it was necessary that only half of the witnesses in number sign.
The French commentators and the Court of Cassation all concede that the underlying reason of the French system, though the Code does not mention it, was due to illiteracy in the country. Both of these systems of law were prevalent in Louisiana in 1908, and even if we search into those sources for an explanation of the meaning of the words “for all” as used in the article of our own Code, no satisfactory solution can be found. According to the Partidas, there was no such thing as a nuncupative will by public act; all nuncupative wills were by private act; and this may account for the reason why a signature of a witness to a will was necessary, just as it is necessary under our own Code that nuncupative wills by private act be signed by the witness either in his own handwriting or by the affixing of his mark. The nuncupative will under private signature is the act of the testator or of one of the witnesses, and, unlike the nuncupative will by public act, the verity of its recitals is not vouched for by a sworn officer of the state, and for that reason it would seem that it should be attested and signed by all the witnesses. The nuncupative will by public act, in the instance where the testator declares that he knows hot how to read and write, need not be signed even by the testator himself (Hennessey v. Woulfe, 49 La. Ann. 1376, 22 South. 394), and, reasoning by analogy, it would seem, under the ambiguous wording of the law, that the legislator might well have intended, when one or two witnesses do not know how to write, that their signatures are equally unnecessary as that of the testator. Under that construction the words “for all” would become useless and might be expunged from the law. But it would be equally a *269 strained construction to hold those words as meaning that the educated witness must sign the names of the illiterate witnesses, when there is present at the confection of this document a sworn public officer in the person of the notary public. Is it not more likely, in the light of the French system, where the will is received by a notary, that its recitals, importing authentic proof, need not be attested in writing by all the witnesses, that the signature of one witness, at least, is sufficient, and that the words “for all” were intended to convey the idea that one signature is sufficient “for all” or on behalf of all the witnesses? We rather incline to this interpretation, and, so believing, hold that the mark affixed to the will by Anselm is mere surplusage, that the signatures of the two subscribing witnesses are sufficient, and that the will herein attacked is valid as to form.
Plaintiffs’ third ground of complaint does not affect the validity of the will. They claim that the legacy of the usufruct of the whole of decedent’s property to his surviving widow is null. The trial court so decreed, and the correctness of that ruling is not questioned in the present appeal.
Plaintiffs finally charge that the purported last will of Bihm was not dictated by the testator in the language used by the notary, and that none of the dispositions contained in said will were dictated by the testator. This is a question of fact. The record contains the testimony of the notary and of the witnesses who assisted at the drawing and confection of the will. The testimony of the notary, the only person ■ present who had technical knowledge of the dispositions which the testator might lawfully make, and for that reason more worthy of consideration than that of the witnesses to the will, is that deceased, in dictating his will, used the following language:
“Je veux donner il Frances la portion que la loi lui accorde. Je veux qu’elle ait l’usage de la balance de mes propriétés. J’appointe ma femme pour prendre charge de mes propriétés aprés ma mort, et qu’elle soit pas obligé de fournir caution.”
It is also shown by the testimony of the notary and of Mr. Gilbert L. Dupre, attorney at law, that the deceased had thoroughly posted himself upon the law regulating -his right to dispose of his property.
We are of the opinion, as was the trial judge, that the notary’s testimony is fully worthy of belief; for it is supported by all the surrounding circumstances under which the deceased made his will. The language used by the deceased when he dictated his will, though the phraseology thereof was changed by the notary in order to have it conform to the technical expressions of the Code, imports the same meaning as that contained in the will, no more nor less. The jurisprudence is well settled that the dictation of the will refers to the substance, and not to the style, and that the law requires the will as written to convey the identity of thoughts expressed by the testator, and not the identity of words used by him. Landry v. Tomatis, 32 La. Ann. 113; Hennessay v. Woulfe, 49 La. Ann. 1376, 22 South. 394. See, also, Succession of Riebel, 135 La. 195, 65 South. 106; Board of Control v. Benedictine Fathers, 137 La. 612, 69 South. 23.
The judgment of the district court recognized tlie validity of the will', and to that extent it should be affirmed, but, defendant .having conceded in her answer that she. was not entitled to the usufruct bequeathed to her under the will, said judgment should be amended by condemning her to pay the costs of the district court which had accrued up to the time that she filed her said answer; all subsequent costs to be taxed against plaintiffs.
It is therefore ordered that the judgment appealed from be amended by taxing against defendant costs of the district court incur *271 red up to the time of the filing of her answer, and as thus amended that said judgment be affirmed. It is further ordered that costs of appeal be paid by defendant and appellee.
O’NIELL, J., concurs in the decree.
PRO YO STY and SOMMERVILLE, JJ„ dissent.