(112 So. 802)

No. 28285.

### Succession of BEATTIE.

Nov. 2, 1926.

On the Merits April 25, 1927.

*(Syllabus by Editorial Staff.)*

'On Motion to Dismiss Appeal.

1. Wills ⬤➾81—Disposing portions of will may be void, and appointment of executors valid, and vice versa.

Part or even whole of disposing portion of will may fall or be void, while appointment of executors may be entirely valid, and vice versa.

2. Executors and administrators ⬤➾314(12)—Succession; law requiring provisional execution of judgments appointing curators "or other administrators of successions" notwithstanding appeal covers all representatives of successions, though termed executors (Code Prac. arts. 580, 1059).

Code Prac. arts. 580, 1059, requiring provisional execution of judgments appointing curators of vacant successions "or other administrators of successions" notwithstanding appeal, is broad enough to cover all other representatives of successions, though termed executors and appointed by trial judge because named as such in will; "administrators" being used in generic, not technical, sense.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Other.]

3. Executors and administrators ⬤➾314(12)—Succession; judgment authorizing distribution of estate pursuant to will is suspended by appeal.

Judgment authorizing distribution of estate in accordance with terms of will, being res judicata between parties as to validity of will and disposition of estate, if allowed to become final, is suspended by appeal, so that appellants may not be prejudiced by distribution pending outcome.

#### On the Merits.

4. Wills ⬤➾148—Transcription of will after making mental note thereof "as dictated" by testatrix held adequate compliance with statute (Civ. Code, art. 1578).

Notary's transcription of testatrix's dispositions at table at foot of her bed, after making mental note of entire will as dictated by her, *held* adequate compliance with requirement of Civ. Code, art. 1578, that will be written by notary "as it is dictated."

5. Wills ⬤➾108—Formalities in execution of wills will be rigidly enforced only where law is palpably violated.

It is policy of law to carry out wishes of deceased persons, and rigid enforcement of formalities required in execution of wills will be limited to instances in which law is palpably violated.

6. Wills ⬤➾148—Will need only convey identity of thought expressed, not of words used by testator; dictation of will referring to substance.

Dictation of will refers to substance, not style, and law requires only that will as written convey identity of thought expressed by testator, not identity of words used by him.

7. Wills ⬤➾148—Will held not null because witnesses present failed to hear and understand testatrix's dictation, in view of others' testimony and their voluntary signature of testament (Civ. Code, art. 1578).

Will *held* not a nullity because of failure of witnesses present to hear and understand testatrix's dictation, as contemplated by Civ. Code, art. 1578, where notary who executed will and attorney for testatrix testified that all witnesses were in position to hear and understand everything, and they voluntarily signed testament after hearing it read to and approved by testatrix.

**8. Wills** ⬦⟹303(3) — **Subscribing witnesses' testimony, impeaching statements in will, is insufficient to overcome presumption of validity.**

Subscribing witnesses' testimony impeaching statements in instrument, attested by their signatures as correct, is insufficient to overcome presumption of validity arising from their presence and signatures and notary's official certificate and oath, but must be corroborated by independent facts or reasonable inferences to nullify will.

Appeal from Seventeenth Judicial District Court, Parish of Lafourche; Robert B. Butler, Judge.

Application by W. E. Howell and another, executors, to probate the will of Charlotte Reid Beattie, deceased, opposed by Taylor Beattie. From a judgment dismissing the opposition and ordering the will probated, the opponent appealed, and executors moved to dismiss appeal as suspensive. Motion to dismiss appeal denied in part, and granted in part, and judgment affirmed on the merits.

Caillouet & Caillouet, of Thibodaux, for appellant.

Lawrence H. Pugh, of Thibodaux, for appellees Howell and Schrodt.

Donelson Caffery, Paul A. Sompayrac, and Anna C. McCay, all of New Orleans, for appellee Louisiana State Soc. for Prevention of Cruelty to Animals.

On Motion to Dismiss.

ST. PAUL, J. The deceased made her will by public act, making a certain distribution of her estate and appointing two executors. The legal heirs unsuccessfully opposed the probate thereof, and have appealed. The executors move that the appeal be dismissed as a *suspensive* appeal.

I.

[1] A judgment probating a will and ordering the execution thereof comprises essentially two distinct propositions, the one recognizing and confirming the executors named in the will and placing them in charge of the estate, and the other directing the distribution of the estate in accordance with the provisions contained in the will. These two are not necessarily inseparable; on the contrary, they may, and do, stand entirely separate. Thus, a part or even the whole of the disposing portion of the will may fall or be void, whilst the appointment of executors may be entirely valid; and vice versa, the disposing portion may be entirely valid, but the appointment of an executor lapse or be void.

II.

[2] Our law provides (Code Prac. arts. 580, 1059), *ex necessitate rei* as it were, that judgments appointing curators of vacant successions, "or other administrators of successions," shall be executed provisionally notwithstanding an appeal, i. e., that no suspensive appeal shall lie from such judgments. Succession of Damico, 150 La. 888, 91 So. 286. And the term, "other administrators of successions," is broad enough to cover *all* other representatives of successions by whatever name called, the term *administrators* being there used in a generic, not a technical, sense. Succession of Lefort, 139 La. 52, 71 So. 215, Ann. Cas. 1917E, 769. We therefore conclude that the appeal herein taken cannot be allowed to suspend the appointment of succession representatives made by the trial judge, even though termed *executors* and appointed by him because named as such in the alleged will of the deceased.

III.

[3] On the other hand, in so far as the judgment admitting the will to probate authorizes, in effect, the distribution of the estate in accordance with the terms of the alleged will (in other words, recognizes the validity and force of the disposing portions of the alleged will), we think the judgment is suspended by the appeal. In that respect it is (by reason of a controversy raised and issue joined thereon) a final judgment as to the validity of the will and of the disposition therein made of the es-

163 LA.—27

tate, which, if allowed to become final, will obtain the force of res judicata between the parties; manifestly, such a judgment may be suspended by appeal so that the appellants may not be prejudiced by a distribution of the estate pending the outcome thereof. And our conclusion is that the appeal must be held *suspensive* as to that feature thereof.

### Decree.

It is therefore ordered that, in so far as the judgment appealed from names executors to administer the estate of the deceased, same be dismissed as a suspensive appeal and maintained as devolutive only, and that in all other respects the motion to dismiss be denied.

### On the Merits.

ROGERS, J. Miss Charlotte Reid Beattie died at her domicile, in the town of Thibodaux, this state, on April 13, 1926, leaving an estate consisting largely of movable property, which she disposed of by last will and testament executed in nuncupative form by public act on April 8, 1926. The application of the executors named therein to have the will registered and executed was opposed by a brother of the deceased, who asked that the will be annulled on the grounds: (1) That all the witnesses were not present during all the time required for its confection; (2) that it was not dictated by the testatrix and received by the notary as required by law; and (3) that if the witnesses were present they neither heard nor understood any dictation that took place.

The court below dismissed the opposition, upheld the will as valid, and ordered that it be registered and executed. The opponent has appealed from the judgment.

In support of his first ground of attack, opponent urges that two of the subscribing witnesses were not present during the whole time occupied in the preparation of the testament, particularly during the alleged dictation by the testatrix, and that one of them, while the notary was engaged in writing the testamentary dispositions, absented herself from the room.

Testimony on this issue was adduced from the three subscribing witnesses to the will, two brothers and a sister, friends of the testatrix; from the wife of one of the executors, who was in the hall adjacent to the room in which the will was made; from the attorney of the testatrix, who had been sent for and consulted by her in regard to the testamentary dispositions, and who. was present in the room during the entire time required for the confection of the instrument; and from the notary before whom it was executed.

The testimony of these witnesses was reviewed in a well-considered opinion rendered in writing by the judge a quo. He reached the conclusion that opponent failed to establish by a fair preponderance of the evidence the nonpresence of all the witnesses, or the absence of any one of them, during any portion of the time occupied in the preparation of the will. After carefully reading the testimony, we have reached the same conclusion.

[4] Opponent's second ground of attack is based upon the contention that the requirement of Civ. Code, art. 1578, that the "testament must be dictated by the testator, and written by the notary as it is dictated," was not observed in the confection of the will of the de cujus.

In amplification of this contention, it is argued on behalf of opponent that there is no dictation in the technical definition of the word, and within the meaning of the codal article, "unless the notary at the same time, and in proportion as the testator declares his last wishes, writes down the dispositions—not word by word, perhaps, but clause by clause, or disposition by disposition."

On this controverted point, the evidence shows that the testatrix dictated her entire will to the notary, who made mental note

thereof and then repaired to a small table placed at the foot of the bed wherein she was lying, where he made the transcription of her dispositions. It is not clear, from the testimony, whether the notary previous to receiving and transcribing the dictation of the testatrix had written the formal part of the will or not. This latter circumstance, however, is unimportant, the serious legal question presented being whether in the preparation of a nuncupative will by public act the law requires the notary to receive and write the will at the same time as it falls from the lips of the testator, or whether it is sufficient compliance with the statute for him to receive the dictation as a whole and then to transcribe it.

The judge a quo found that the dictation in question was an adequate compliance with the requirement of the law that the will must be "written by the notary as it is dictated." We think he is correct.

The construction sought to be placed by opponent upon testamentary dictation is entirely too narrow for practical application. Carried to the extreme of technicality, it would require each word as it is uttered by a testator to be written down by the notary, necessarily omitting the usual marks of punctuation to clarify the meaning of the testator, unless he is able to indicate the proper marks as he proceeds with the dictation of his dispositions. We cannot sanction, nor do we find that this court has ever sanctioned, any such technical construction.

It is true, the eminent French commentators, from whom counsel for opponent have liberally quoted, approve a strict construction of the word "dictate" as applied to a testamentary disposition, holding, in general, that it is the act of the testator pronouncing intelligibly and spontaneously his dispositions that they may be written by the notary in proportion as they are pronounced. It is true, also, that in Hennessey v. Woulfe, 49 La. Ann. 1376, 22 So. 394, this court, in its opinion, quotes certain language used by Boilleaux, an excerpt from which is cited by opponent in his brief, in setting forth his appreciation of the law governing testamentary dictation under the provisions of the Napoleon Code. But the quotation in question was not necessary to the decision, and was referred to by the court merely in an academic discussion of the law. The facts in that case were that, prior to the making of her will, the testatrix and the notary engaged in a conversation relative to the dispositions she intended to make. At that time, the notary made a memorandum of these dispositions. In writing the will, after the completion of the formal part, the notary read from this memorandum to the testatrix, who then proceeded to dictate her testament word for word by repeating the language suggested by the notary. The plaintiffs in the case insisted that this method of dictation was unlawful since it was the dictation of the notary, and not of the testatrix; or, in other words, that it was the notary dictating and the testatrix dictating back. The court upheld the validity of the will.

But the conclusions of the French commentators, while always commanding the highest respect in our courts, are not always a safe guide to be followed in the interpretation of the articles of our Code similar to those of their Code. See Hubgh v. Railroad Co., 6 La. Ann. 496. The interest and habits of our people are essentially different from those of the French people. In many ways, this difference is reflected in our legislation and jurisprudence.

[5, 6] It is the policy of our law to carry out the wishes of deceased persons and not to push the legal requirements in such cases to extremes. And the tendency of our jurisprudence is to limit the rigid enforcement of the formalities required in the execution of wills only to those instances in which the law is palpably violated. Succession of Crouzeilles, 106 La. 442, 31 So. 64. Thus it is well settled

that the dictation of the will refers to the substance, and not the style, and that all the law exacts is that the will, as written, conveys the identity of thought expressed by the testator, and not the identity of words used by him. Bihm v. Bihm, 144 La. 260, 80 So. 323, and authorities cited therein. It was held not to violate the codal provision of dictation, where the dispositions of a lady 82 years of age were not dictated of her own impulse, but were elicited from her by questions put by the notary, and answers, on her part, to the questions; the notary not writing the questions and answers as spoken, but writing down their substance in what he considered to be a more appropriate form. See Succession of Riebel, 135 La. 195, 65 So. 106. The liberal tendency of our jurisprudence is apparent, also, from the decision maintaining the validity of a will typewritten by the notary. See Prudhomme v. Savant, 150 La. 256, 90 So. 640.

A situation strikingly similar to the one now before us was presented and passed upon by this court in the early case of Segur's Heirs v. Segur et al., 12 La. 25. There the evidence showed that the notary took down a memorandum on a piece of paper of the dictations of the testator, and that after leaving the bedside he paused to mend his pen, meanwhile speaking with the universal legatee and one of the witnesses. He then repaired to a table where he wrote out the will from the written memorandum before him. The court held that the dictation of the will and the manner in which it was written was a substantial compliance with all legal requirements.

In the case before us, the notary, instead of noting the testatrix's dispositions in writing and then transcribing them, noted them mentally and then wrote them out as they were dictated to him by the testatrix. The legal principles governing both cases are the same. The testamentary dispositions attacked in each instance were first dictated to the notary as a whole, and when written by him from his written notes in the one case, and from his mental notes in the other. It is not seriously disputed that after the entire will in question here was written out by the notary, it was read by him to the testatrix in the presence of the witnesses, and that she stated she persisted in the dispositions therein made, and that it was her will.

If Segur's will was valid, the will under attack here is also valid. And we see no good reason to hold otherwise.

[7] The third and last ground of nullity urged by opponent against the will in question is the alleged failure of the witnesses, if present, to hear and understand the dictation of the testatrix. The position is untenable.

Civ. Code, art. 1578, provides, among other things, that the will must be received by the notary "in presence of three witnesses," etc. This requirement is, obviously, to insure honesty and accuracy on the part of the notary in receiving and writing down the testamentary dispositions. In furtherance of this purpose, it is undoubtedly, in the contemplation of law that the witnesses should hear and understand the things that transpire in their presence during the preparation of a will. In the case before us there is no attack upon, and no suspicion of, the integrity of the notary who executed the will. According to his testimony and the testimony of the attorney for the de cujus, both experienced and reputable members of their respective professions, all of the witnesses to the will were present and in a position to hear and understand everything that transpired, including the dictation of the testatrix. It was heard and understood by the notary and by the attorney, and they and the testatrix were warranted in the belief that it was likewise heard and understood by the witnesses, who raised no question and made no protest that such was not a fact. They voluntarily affixed their signatures to the completed testament after hear-

ing it read as a whole to the testatrix, and after she had declared it to be in accord with her dictation as pronounced in their presence and hearing.

The testimony of the subscribing witnesses on the trial of the proceeding to annul the will, to the effect that they either heard indistinctly or not at all the dictation of the testatrix, is in utter contradiction of what they personally avouched when they signed the testament. It is also in conflict with the presumption of the validity of the instrument flowing from accompanying circumstances and contemporaneous acts.

It may be that not every word of the dictation was understood or assimilated by the witnesses, at the moment it was uttered, but if such was the case they kept the knowledge thereof to themselves. They made no request for the repetition or explanation of any of the words used. They were in a position to hear if they listened, and they were actually professing to hear and understand the dictation at the moment it was pronounced.

[8] Testimony of subscribing witnesses which is adduced on the contest of the will and which, in effect, impeaches the solemn statements contained in the instrument which by their signatures they have attested as correct, is not in itself sufficient to overcome the presumption of validity arising from their presence and signatures and the official certificate of a public officer fortified by his oath. Their testimony must be corroborated by independent facts or reasonable inferences. "Otherwise," as aptly stated by the judge a quo, "testators would be at the mercy of defective memories and uncertain minds, to say nothing of venal callousness that for a consideration or other improper motive might choose to modify or erase a record when time may have already written the impossibility of remedying the consequences of the nullity."

Opponent, in support of his contention, has cited from the French authorities, and has also referred to a number of cases in our own jurisprudence. What we have said concerning the French authorities in our discussion of opponent's second ground of attack on the will applies with equal force to the same character of authorities relied upon by him to maintain this third ground of attack on the instrument. We do not find any of the cases from our own jurisprudence applicable to the issues presented here.

In Knight v. Smith, 3 Mart. (O. S.) 156, the will was set aside because it was dictated to and written by the notary's clerk, although it was afterwards read by the notary to the testator, in the presence of the requisite number of witnesses.

In Mouton v. Cameau's Heirs, 5 La. Ann. 565, where the will was set aside, the subscribing witness who testified in the case did not hear the testator speak a word for the very obvious reason that the testator did not dictate anything to the notary in his presence.

In Hebert's Heirs v. Hebert's Legatees, 11 La. 361, Langley's Heirs v. Langley's Executors, 12 La. 114, Breaux v. Gallusseaux, Test. Ex., 14 La. Ann. 233, 74 Am. Dec. 430, Succession of Dauterive, 39 La. Ann. 1092, 3 So. 341, and Lataprie v. Baudot, 152 La. 177, 92 So. 776, the wills were set aside because in each case either one, or more, of the witnesses did not understand the language in which the will was written. Manifestly, the fact that such a witness was able to hear the dictation was of no moment, since it was impossible for him to understand what he did hear.

Debaillon v. Fuselier, 159 La. 1044, 106 So. 559, was a case in which the will was dictated in French by the testator to the notary, who wrote it down in English, and then read it back in both languages to the testator, who only understood the former language. The will was decreed to be invalid on the ground that it was not read to the testator as required by law.

For the reasons assigned, the judgment appealed from is affirmed at appellant's cost.