(83 South. 835)

No. 23689.

ERVIN et al. v. SHELBY'S HEIRS.

In re ERVIN et al.

(Feb. 2, 1920.)

*(Syllabus by the Court.)*

1. APPEAL AND ERROR ⊜⫸878(6)—APPELLATE COURT CANNOT AMEND AT INSTANCE OF APPELLEE WHO HAS FILED NO ANSWER TO APPEAL, PRAYING FOR AN AMENDMENT.

It is axiomatic that a judgment cannot be amended by an appellate court at the instance of an appellee who has filed no answer to the appeal, praying for an amendment; and still less can it be amended, in such case, by means of a writ of review from this court.

2. HUSBAND AND WIFE ⊜⫸273(8)—INTEREST IN COMMUNITY PROPERTY OF HEIRS AND SURVIVING HUSBAND.

Where the wife, living under the régime of the community, dies, the property of the community devolves, in indivision, upon her surviving husband and her heirs; and he has no capacity to alienate the interest of such heirs save under the conditions prescribed by law.

3. WILLS ⊜⫸100 — SINGLE INSTRUMENT IN NUNCUPATIVE FORM PURPORTING TO BE LAST RECIPROCAL WILLS OF HUSBAND AND WIFE IS VOID.

A single instrument, purporting to express the last, reciprocal, wills, in nuncupative form, by public act, of husband and wife, is upon its face an absolute nullity, being prohibited by law, in the interest of public order; is not susceptible of ratification; acquires no validity by lapse of time, or ex parte orders; and may be attacked or objected to, whenever offered as a muniment of title.

Action by Monroe E. Ervin against Heirs of David Shelby. Judgment for plaintiff was reversed in part on appeal, and plaintiff and others apply for a review and a reversal. Application dismissed.

R. A. Fraser, of Many, for applicants.

S. D. Ponder, of Many, for respondents.

Statement of the Case.

MONROE, C. J. This is an application for the review and reversal of a judgment of the Court of Appeals, Second Circuit, reversing in part a judgment of the district court for the parish of Sabine. The relators are the person named in the title and two members of the Satcher family, sons and heirs of the late T. J. Satcher, to whom Ervin sold 80 acres of land constituting part of that the title to which is affected by the judgment complained of. The case as disclosed by the record is as follows:

The relator, Ervin, an old man and a negro, was married in 1876, or about that year, to Elcie, daughter of Daniel Shelby, Sr., and lived with her, under the régime of the community, until 1905, when she died, leaving as her heirs certain known and placed brothers and sisters and one niece, and perhaps other brothers and sisters, nieces, and nephews whose whereabouts are unknown. She also left her interest in the property of the community, consisting, so far as the record shows, of land in Sabine parish, which, with

all other property she may have possessed, she is said to have devised and bequeathed to her husband by means of a reciprocal will, whereby she and he each attempted to leave to the survivor all that he or she owned or possessed. That instrument was executed before a deputy clerk of court and ex officio notary of the parish of Sabine on July 13, 1905, was admitted to probate on July 27, 1905, on the petition of relator, and reads (so far as need be here quoted) as follows:

"It is therefore ordained and established as our last will and testament, and hereby revoking all others, that the survivor is to have and to own in their own right all the property the other may have at the time of his or her death, whether movable or immovable, personal; and rights and credits, or of any and every kind whatsoever, and that the survivor is hereby appointed executor of this will, without bond. Thus written as dictated by the said Ervin and his said wife and the same was read to them by me, notary, in the presence of the undersigned witnesses, and all formalities have been performed without interruption or turning aside to other acts, and was signed by said parties, said witnesses and me, said notary, on the day and year first above written."

This suit was instituted by the relator (Ervin) in September, 1917, the allegations and prayer of his petition being, in substance, as follows:

(1) That he is the sole owner and actual possessor of the S. ½ of N. W. ¼; N. ½ of S. W. ¼; S. W. ¼ of S. W. ¼ of section 20 (giving township and range, which are here and hereafter omitted for the saving of time and space); that prior to May 5, 1911, he was the owner, in possession, also, of the N. ½ of N. W. ¼ of said section 20, and that he on that day sold said 80 acres, and delivered possession of the same to T. J. Satcher. (2) That he has been in possession of said land in good faith, under a title translative of property, openly and uninterruptedly, for more than 10 years. (3) That he acquired his titles from David Shelby, Sr., and his heirs, but that by error and

inadvertence "said property was not correctly described in his deeds of purchase, and that he desires and is entitled to have his title to said property quieted and perfected by judgment of this court, for his own benefit and for the benefit of his vendees." (4) That David Shelby, Sr., died intestate many years ago, leaving as his sole heirs John Shelby, Mathilda Stringer, and Mary Henderson, children now living in Sabine parish; David Shelby, Jr., and Emily Robinson, children whose residence is unknown, but who are nonresidents; Robert Shelby, deceased, whose heirs are unknown; and Edna May Shelby, grandchild, only heir of W. S. (Solomon) Shelby, deceased son, a resident of Caddo parish. (5) That it is necessary that a curator ad hoc be appointed to represent the absent and unknown heirs of David Shelby, Sr. Wherefore he prays that such appointment be made, that the parties be cited, and that he "have judgment correcting and perfecting his title and quieting his possession in and to the above-described property, for his benefit and the benefit of his vendees," etc. The petition fails to mention the nature of the error complained of, but, as developed on the trial, it occurred in describing the land as in section 29, instead of section 20. It also fails to mention the will of Elcie (Shelby) Ervin as a muniment of title, and that instrument was introduced in evidence, over the objection of defendant's counsel that it is absolutely void upon its face. The Shelby heirs, present and absent, known and unknown, represented by the same attorney, acting as employed counsel and curator ad hoc, answered, denying plaintiff's allegations of possession in good faith, under title, and of error of descriptions, admitting the allegations of paragraph 4, but averring that Elcie Ervin was also a child and heir of David Shelby, Sr., and that, she having died intestate, leaving neither descendants nor ascendants, they are her sole

heirs; further averring that certain lands described by plaintiff were sold by David Shelby, Sr., after the death of his wife, and after her community interest therein had devolved upon them as her heirs, and that, if certain other lands so described were acquired by plaintiff during the life of his wife, her community interest therein had also upon her death devolved upon them, since she died intestate and without leaving ascendants or descendants, and that, in either case, or both of them, they are entitled to be recognized as the owners of the interests mentioned and to a partition of the land; that if plaintiff has held any of said land since the death of his wife, it has been as usufructuary, with respect to her half interest; and that he was without capacity to alienate such interest; that especially is that true of the 80 acres alleged to have been sold to T. J. Satcher, in behalf of whose heirs, as well as his own behalf, plaintiff brings this suit, and that it is therefore necessary that those heirs, personally, should be made parties hereto. Hence they pray that Sam S. and Everett D. Satcher, heirs of T. J. Satcher, be cited to appear herein with respect to their alleged interest in the title set up and sought to be perfected, and, after hearing, that the demands of plaintiff be rejected, and that they (defendants) have judgment recognizing them as owners by inheritance of certain interests in the lands described in the petition and entitled to partition of the same.

Plaintiff excepted, on the grounds that defendant's demands are not incidental to those of his petition, and cannot be set up in reconvention; and he moved to strike out so much of the answer as attempts to call the Satchers into the case, on the ground that such attempt is unauthorized by law. The Satchers, through the same counsel, filed exceptions of misjoinder, illegal cumulation of actions, and no cause of action. The

146 LA.—19

motion and exception were overruled, and the Satchers answered, denying that defendants have any interest in the N. ½ of N. W. ¼ of section 20, pleading the prescription of 5 and 30 years, alleging that their father bought that tract from plaintiff on May 5, 1911, by warranty deed, and calling plaintiff in warranty. Thereafter plaintiff pleaded the prescription of 5 and 10 years against defendant's demands, and defendants pleaded the prescription of 5 years against plaintiff's action.

On the trial of the case, it was shown that the wife of David Shelby, Sr., died in June, 1888; that he died in July, 1893; that Elcie, wife of M. E. Ervin, died in 1905; that David Shelby, Sr., owned no land in section 29 of the township and range here in question, but that he did own, in section 20, of that township and range the subdivisions which were sold by him, and that other conveyances thereof were made, as here below set forth, to wit:

April 19, 1884, David Shelby, Sr., to M. E. Ervin N. W. ¼ of S. W. ¼ of section 20.

April 18, 1888, David Shelby, Sr., to W. S. ("Sol") Shelby N. ½ of N. E. ¼ of section 29.

January 1, 1890, David Shelby, Sr., to M. E. Ervin and W. S. Shelby S. ½ of N. W. ¼, N. E. ¼ of S. W. ¼ and S. W. ¼ of S. W. ¼ of section 20.

March 15, 1901, "Robert Shelby, tutor," to M. E. Ervin N. ½ of N. W. ¼ and undivided half of N. E. ¼ of S. W. ¼ and S. W. ¼ of S. W. ¼ of section 29.

March 15, 1901, M. E. Ervin to "Robert Shelby" W. ½ of S. W. ¼ of section 17, and N. ½ of N. W. ¼, and 1 acre square in N. W. corner of N. W. ¼ of N. E. ¼ of section 20.

March 11, 1914, Edna May Shelby to M. E. Ervin S. ½ of N. W. ¼ of section 20.

The following was placed of record, to wit:

"It is admitted that David Shelby, Sr., bought the land in controversy by deed dated January 2, 1873, and recorded in the records of Sabine parish, La.; that the land that was bought by David Shelby, Sr., was the northwest quarter and the southwest quarter of section 20, township 4, range 12, being three hundred and twenty acres."

From the foregoing admission, and the conveyances offered in evidence by plaintiff as above set forth, it appears certain that David Shelby, Sr., sold the N. W. ¼ of S. W. ¼ of section 20 to Ervin on April 19, 1884 (prior to the death of his wife), and equally certain that the S. ½ of N. W. ¼, N. E. ¼ of S. W. ¼, and S. W. ¼ of S. W. ¼ of that section, sold by him to Ervin and Sol Shelby on January 1, 1890, after the death of his wife, belonged at that time in indivision to him and her heirs; and it seems probable that the balance of the two quarter sections (acquired by Shelby in 1873) remained in his name and possession until his death in 1893, when it devolved upon the heirs of both his wife and himself. Plaintiff (Ervin) alleges that he now owns the S. ½ of N. W. ¼, N. ½ of S. W. ¼, and S. W. ¼ of S. W. ¼ of section 20, and formerly owned (and sold to Satcher) the N. ½ of N. W. ¼ of that section. But, as he acquired and parted with the S. ½ of N. W. ¼ prior to the death of his wife, defendants have no rights therein, and of the tracts the titles to which are here put at issue, and are shown, with the Satchers, to be interested only in the N. ½ and the S. W. ¼ of S. W. ¼ and N. ½ of N. W. ¼ of section 20.

The district court gave judgment for plaintiff, "correcting and perfecting the descriptions of the lands" purchased "by him from David Shelby, Sr.," and decreeing him "to be the owner, and quieted in the possession, of the S. ½ of N. W. ¼, N. ½ of S. W. ¼, and S. W. ¼ of S. W. ¼ of section 20, T. 4 N., R. 12 W.," and further decreeing that he "have judgment for, and on behalf and for the benefit of, Samuel S. Satcher and Everett Daulton Satcher," decreeing them to be the owners, and quieted in possession, of the N. ½ of N. W. ¼ of said section 20. The defendants took an appeal from that judgment, but neither the plaintiff nor the Satchers appealed nor answered the appeal so

taken, and there was judgment by the Court of Appeals (on rehearing) as follows:

"It is ordered * * * that the judgment appealed from be * * * amended and corrected by recognizing defendants as the owners, in indivision, by inheritance from their sister, Elcie Ervin, of an undivided half interest in and to the N. ½ of N. W. ¼, N. ½ of S. W. ¼ and S. W. ¼ of S. W. ¼ of section 20, township 4 N., range 12 west. The rights of plaintiff and warrantors to demand, in the proper proceedings, remuneration for improvements placed on the property described herein, for the restoration of the purchase price of any part thereof, or for the amounts paid on account of the community between plaintiff and Elcie Ervin, are hereby reserved, and in all other respects not in conflict herewith the judgment appealed from is affirmed; the costs of the appeal to be paid by plaintiff and warrantors."

### Opinion.

[1] It is axiomatic that a judgment cannot be amended at the instance of an appellee who has filed no answer to the appeal, praying for an amendment. C. P. art. 888; Hen. Dig. vol. 1, p. 70, Nos. 7, 13, 16; Morris v. Cain, 39 La. Ann. 724, 1 South. 797, 2 South. 418; City of New Orleans v. N. O. Jockey Club, 115 La. 911, 40 South. 331; Oglesby v. Turner, 127 La. 1094, 54 South. 401. In the case last above cited, plaintiff attacked a will, upon two specific grounds, and defendant pleaded res judicata, and urged that plea in this court, but it was here said:

"This plea was sustained as to the specific grounds of nullity set forth in the petition in the first suit, but was overruled as to the two grounds of nullity above mentioned. The cause was tried on its merits, and there was judgment in favor of the defendants. The plaintiff has appealed. Defendants have not appealed, nor have they answered the appeal, praying for the reversal of the judgment on the plea of res judicata. Hence such judgment cannot be disturbed."

The questions of the right of the defendants herein to set up the defense and demands in reconvention urged by them, and

to call the Satchers into the case, were therefore concluded by the judgment of the district court, overruling the exceptions and motion to strike out; and the failure of the plaintiff and the Satchers to appeal therefrom or answer the appeal taken by defendants, shut off inquiry into those questions on the appeal by defendants, and a fortiori they are not open to review in this court for the benefit of the appellees, relators herein.

[2, 3] The question whether (the demands and call thus mentioned being before the court) the allegations of the defendants were sustained by the evidence is answered in the affirmative by the finding of facts which precedes this opinion.

It is argued by relators' counsel that, as Ervin and his wife might have made separate wills, each leaving everything to the other, the objection that they made those dispositions in one reciprocal will concerns only a question of form, that it was therefore error for the Court of Appeals to hold that the will as made was an absolute nullity, open to collateral attack, and that the attack was not barred by the prescription of 5 years. It seems to us, however, that it would be as reasonable to contend that, as any one who is sui juris may make such a written will as the law authorizes, the question whether he does so, or makes a verbal will is one of form, but that doctrine finds no support in either the law or the jurisprudence of this or any other country, so far as we are at present advised.

The law (Civ. Code) declares that:

"Art. 1572. * * * A testament cannot be made by the same act by two or more persons, either for the benefit of a third person or under the title of a reciprocal or mutual disposition.

"Art. 1751. * * * Married persons cannot during marriage, make to each other, by an act, either inter vivos or mortis causa, any mutual or reciprocal donation, by one and the same act."

"Art. 1576. * * * The custom of making verbal testaments * * * is abrogated."

In Frederic v. Frederic, 10 Mart. (O. S.) 189, it appeared that a husband and wife had made a mutual donation, to the survivor, of the usufruct of all the property which should be in their possession at the time of the death of the party dying first, and the court, through Martin, J., said of it:

"The donation was absolutely void. 'Married persons cannot, during marriage, make to each other, by an act inter vivos or mortis causa, any mutual or reciprocal donation, by one and the same act.' * * *
"I do not see how it is possible to say that what the law has said must not be done can be valid."

In Bihm v. Bihm, 144 La. 273, 80 South. 325 (almost a century later), the question was presented as to the validity of a nuncupative will by public act (as the will here in question purports to be), to which the notary had affixed the mark and written the name of an illiterate witness; and it was held by a majority of the members of this court (after considering C. C. art. 1580, to the effect that "this testament must be signed by the witnesses, or at least by one of them for all if the others cannot write") that conformity to that and certain other requirements "is of the very essence of the instrument, and nonconformity means that it is not a nuncupative testament by public act," quoting Falkner v. Friend, 1 Rob. 48, and Vidal v. Duplantier, 7 La. 45.

In Gasquet et al. v. Dimitry, 9 La. 590, considering the provisions of C. C. art. 11, to the effect that individuals cannot, by their conventions, derogate from the force of laws made for the preservation of public order or good morals, in its application to the incapacity of a wife to bind her estate for the debt of her husband, the court said:

"In every well-organized state, those laws which establish the order of hereditary succes-

sion, which regulate the capacity to dispose by last will, and particularly those which define the capacities * * * of particular classes of persons, and especially of minors and married women, in reference to contracts, would seem to stand first in rank of those rules involving the great interests of public order, and essential to the welfare of society."

And it was held that the wife was incapable of renouncing the protection which the law afforded her. In Lagrange v. Barre and Others, 11 Rob. 302, it was held that article 1484 (now 1497), declaring that a donation inter vivos shall in no case devest the donor of all of his property, and that, if he does not reserve enough for his subsistence, the donation is null for the whole, is a law of public order, and that actions to annul donations in contravention of its provisions are not barred by the prescription of five years. In Provost v. Provost, 13 La. Ann. 575, it was said (referring to the prohibition against substitutions and fidei commissa, in article 1507):

', "And the prohibition contained in that article being in the interest of public order, the bequest clashing with it is an absolute nullity, incurable by the prescription of five years. * * * And the ex parte order of the clerk of the district court for the execution and registry of the will * * * does not transform what is absolutely null into a just title, which will support the prescription of five years. The defendant cannot change the nature and origin of her possession. She holds only by a title [which is] void upon its face."

See, also, Abston v. Abston, 15 La. Ann. 137; Dalton v. Wickliffe, 35 La. Ann. 355.

In Succession of Desina, 135 La. 415, 65 South. 556, it was held that, where a will shows upon its face the birth of a child to the testator, after its execution, it is an absolute nullity, and the order for its execution should be revoked. The difference, as we take it, between a relative and an absolute nullity is that the one may be cured by ratification, express or implied, and that the other is incurable. A will void upon its face

because in contravention of a prohibitory law is not susceptible of ratification; it is, in legal contemplation, nonexistent; acquires no validity by lapse of time, or ex parte orders, and may be attacked or objected to whenever offered as a muniment of title.

Upon the whole, we find no error in the judgment here complained of, and the demands of the applicants herein are therefore denied and this application dismissed at their cost.