(129 So. 920)

### MOORE v. EXECUTIVE COMMITTEE OF FOREIGN MISSIONS OF THE PRESBYTERIAN CHURCH IN THE UNITED STATES.

No. 30513.

July 2, 1930.

Rehearing Denied Aug. 7, 1930.

Thigpen, Herold & Cousin, of Shreveport, for appellant.

Foster, Hall, Barret & Smith, of Shreveport, for appellee.

THOMPSON, J.

This case presents a contest for an undivided two-thirds interest in certain land described in the petition and situated in the parish of Richland.

The title to the other one-third interest is admitted to be in defendant.

It is also admitted by all parties that the land was owned in its entirety by Johnson Jordan under a regular chain of title going back to its severance from the public domain.

Jordan died in 1877 leaving a surviving widow and several heirs.

On November 29, 1877, the widow and heirs made an extrajudicial partition under and by which the whole of said land was allotted to Nannie McMeekin, who was a daughter of Jordan and the then wife of William McMeekin.

Nannie McMeekin died in 1882 at her domicile in Tennessee.

She left no descendants, but was survived by her mother and husband and some collateral heirs. By a last will and testament she bequeathed all of her property to her husband, William McMeekin.

As the mother of Nannie McMeekin survived her daughter, the will was reduced by consent to the extent of one-third and this was recognized by the universal legatee.

Mrs. Jordan having died, William McMeekin in 1899 filed a suit for partition against the heirs of Mrs. Jordan and the whole property was sold at judicial sale to effect said partition.

At this sale William McMeekin became the purchaser.

In the meantime and before this purchase, William McMeekin had married Mary Sue Bryan and there existed between them the legal community of acquets and gains.

The couple were living in Tennessee and had been residents of that state all of their lives.

William McMeekin died at his domicile in 1916 without ascendants or descendants. He left a will in which he gave all of his property to his wife, Mary Sue Bryan McMeekin.

The will was duly probated in the proper court of Tennessee, and a verified copy was presented to the court of Richland parish and duly approved, registered, and ordered executed.

Mrs. Mary Sue Bryan McMeekin died in 1924 without ascendants or descendants, but left a will bequeathing all of her property in Louisiana to the defendant in the present suit. This will was duly probated in Tennessee, where it was executed and where as we have noted the testatrix resided. A copy was also presented to the court of Richland parish and was approved, registered, and ordered executed.

At the death of William McMeekin in 1916, he left a brother Peter McMeekin as the only surviving heir to his separate estate. And at the death of said Peter McMeekin, he left a will in which he instituted Thomas Gairns as residuary legatee. The latter by last will named the plaintiff Mrs. Moore as residuary legatee of his estate. Neither Gairns nor Mrs. Moore were related to Peter or to William McMeekin.

The two wills last referred to were probated in Tennessee in October, 1924, but were not approved and registered in this state until March 4, 1929, just four days before the present suit was filed.

It will be observed from the facts stated that the plaintiff's claim to the two-thirds interest in the land is based solely on the alleged inheritance by Peter McMeekin from his brother William McMeekin and by the two last-mentioned wills.

On the other hand, the title of the defendant primarily has as its foundation the will from William McMeekin to his wife, Mary Sue Bryan McMeekin.

If that will is valid, then the plaintiff's suit must fail.

The will is a mutual or reciprocal will by husband and wife, evidenced by a single in-

strument in writing and signed by both parties.

The first bequest was on the part of the husband giving all of his property to his wife, and the second by the wife giving all of her property to her husband. The will concluded as follows:

"We make this mutual will to carry into effect a desire long entertained and often expressed to each other that the survivor of the two should become sole owner of everything possessed by the one that may die first."

Of course it is conceded that such a mutual will contained in a single instrument, if it had been executed in this state by husband and wife domiciled in this state, would be utterly null and void and without any legal effect of ·transmission of property situated in this state.

Article 1751, Civil Code, declares that married persons cannot, during marriage, make to each other, by an act, either inter vivos or mortis causa, any mutual or reciprocal donation by one and the same act.

In the case of Ervin v. Shelby's Heirs, 146 La. 574, 83 So. 835, it was said:

"A single instrument, purporting to express the last, reciprocal, wills, in nuncupative form, by public act, of husband and wife, is upon its face an absolute nullity, being prohibited by law, in the interest of public order."

The will in this instance, however, was executed in another state and at the domicile of husband and wife, and the evidence shows that a will so executed is a valid will under the laws of that state. The will was by the courts of that state recognized as a valid will, was duly probated, and ordered executed.

There is no question here of the right under our law of the husband and wife to make

mutual or reciprocal wills, the one to the other. The only prohibition against such mutual wills is that they cannot be made in one and the same instrument.

The prohibition clearly relates to a matter of form and not to one of substance. There is no prohibition against the transmission of property by mutual wills contained in separate acts clothed in legal form.

Article 10 of the Civil Code declares that the form and effect of public and private written instruments are governed by the laws and usages of the places where they are passed or executed.

But the effect of acts passed in one country to have effect in another country is regulated by the laws of the country where such acts are to have effect.

According to the rule thus laid down, both the form and the effect of the will under consideration are governed by the laws of Tennessee with respect to property situated in that state.

But with respect to the property situated in Louisiana the form of the will is governed by the laws of the place where the will was executed, and the effect or transmission of the property by the laws of this state, where the property disposed of is located.

If therefore the husband or the wife could not under the laws of Louisiana make any will to each other in any form or manner, then clearly the will under consideration would be without effect here.

But as we have seen there is no such absolute prohibition in the laws of this state.

Article 1596, Civil Code, declares that testaments made in foreign countries, or the states and other territories of the Union, shall take effect in this state, if they be clothed with all the formalities .prescribed

for the validity of wills in the place where they have been respectively made.

This article of the Code is unambiguous and is self-explanatory and would seem sufficient to sustain the validity of the will, since the will is clothed with the formalities required by the laws of Tennessee where it was executed and where the testator was domiciled.

However, in order to place the matter beyond controversy, the Legislature of Louisiana in 1912 passed Act No. 176, which declares:

"That a last will and testament, executed without this State in the mode prescribed by the law, either of the place where executed or of the testator's domicile, shall be deemed to be legally executed, and shall be of the same force and effect as if executed in the mode prescribed by the laws of this State; provided, said last will and testament is in writing and subscribed by the testator."

The will is in writing and was subscribed by the testator.

It is valid under the laws of Tennessee where it was executed and where the testator was domiciled, and must therefore be given the same force and effect in this state as if made by a separate and distinct instrument clothed with the forms prescribed by the laws of this state.

Act No. 92 of 1916, known as the Uniform Probate Act, declares that any will valid in the place where executed must be admitted to probate in Louisiana and which probate shall have the same force and effect as the original probate of a domestic will.

The will under consideration was recognized as a will valid in form under the laws of Tennessee, was duly probated, and ordered executed by the courts of that state. It was under the statute referred to likewise ordered registered and executed by the courts of this state.

There was no appeal, so far as the record shows, from the judgment probating the will in Tennessee. That judgment therefore must be regarded as final and conclusive against all persons as to the form and method of the execution of the will.

In the case of Shimshak v. Cox, 166 La. 102, 116 So. 714, 717, this court said:

"Under our statutory law hereinabove referred to and quoted a testament executed in another state, if in writing and subscribed by the testator, is as valid as if made in this state.

"The necessary result of these statutes, therefore, is to make the probate of a will by the court of the testator's domicile conclusive as to the form and mode of execution of the instrument, placing it on the same footing, when registered in this state, as a domestic will in which all the legal formalities have been observed."

As the will under consideration is regarded as valid in form under the laws of Tennessee, it must be so considered under the laws of this state.

And as the will was duly probated where executed and recognized as in due form, that judgment so far as the question of form of the will is concerned is final and conclusive, as was held in the Shimshak Case, supra.

Having reached this conclusion, it is unnecessary to consider other questions elaborately discussed in the briefs.

The judgment below rejected the plaintiff's demand, and that judgment is affirmed, at appellant's cost.