254 So.2d 675 (1971)
Leroy A. GUIDRY, Jr., Plaintiff-Appellee,
v.
Doug A. HARDY and Ruth A. Guidry, Defendants-Appellants.
No. 3522.
Court of Appeal of Louisiana, Third Circuit.
November 12, 1971.
Rehearings Denied December 14, 1971.
Writ Refused January 27, 1972.
*677 Hall, Raggio & Farrar, Richard A. Chozen, Lake Charles, for defendants-appellants.
Camp, Carmouche, Palmer, Carwile & Barsh, Edwin K. Hunter and Edward M. Carmouche, Lake Charles, for plaintiff-appellee.
Before SAVOY, HOOD and CULPEPPER, JJ.
HOOD, Judge.
Plaintiff, Leroy A. Guidry, Jr., instituted this suit for judgment decreeing a document purporting to be the last will and testament of Leroy A. Guidry, Sr., to be null and void. The defendants are the decedent's widow, Ruth A. Guidry, and her son by a prior marriage, Doug A. Hardy (sometimes referred to as Doug A. Guidry). Judgment was rendered by the trial court decreeing the will to be invalid, and declaring a partition agreement entered into by the decedent and his first wife, Mrs. Frank H. Guidry, to be a transfer for adequate consideration. Defendants appealed, and plaintiff has answered the appeal.
The questions presented are: (1) Should this proceeding be stayed pending final determination of a related suit in California? (2) Is the will valid as to form? (3) Are the parties entitled to relief by declaratory judgment? (4) Is the will invalid because of lack of testamentary capacity or undue influence? (5) Is probation of the will precluded because it is contra bonos mores? (6) Is the will invalid, or should there be a reduction, on the ground that the bequests exceed the disposable portion of the testator's estate?
Leroy A. Guidry, Sr., died in California, the state of his domicile, on August 13, 1969. His closest surviving relatives are his widow, Ruth A. Guidry, and his only child, Leroy A. Guidry, Jr., the latter being the issue of a prior marriage.
The decedent was first married to Mrs. Frank H. Guidry. One child, Leroy A. Guidry, Jr., was born of that union. The deceased and Frank H. Guidry were divorced by judgment rendered by a Nevada court on October 13, 1954. A few days after that divorce was granted the decedent married Ruth A. Guidry, one of the defendants in this suit, and he remained married to her until his death in 1969. No children were born of that union. Ruth A. Guidry had three children by a prior marriage, one of whom was Doug A. Hardy, the other defendant in this proceeding.
*678 On May 22, 1968, the decedent, Leroy A. Guidry, Sr., executed a document which purported to be his last will and testament. He was living in California at that time, and the above mentioned document was executed in that state. In that document the testator purported to bequeath to his son, Leroy A. Guidry, Jr., only two items of movable property, a ship's clock and some movie film, both of which had only a nominal value, and he specifically stipulated that his heirs should receive no part of his estate except as therein provided. To his stepson, Doug A. Hardy, he bequeathed his hand tools. He then bequeathed all of the remainder of his estate, real and personal and wherever situated, to his widow, Ruth A. Guidry.
The estate left by the decedent includes movable and immovable property in California and several items of immovable property located in the state of Louisiana. There is evidence in the record tending to show that the Louisiana property belonging to this estate had a gross value of $257,416.65 at the time of the testator's death, and that the debts and taxes owed by it amount to approximately $60,000.00.
The will was presented for probate in California, and an opposition to the probate was filed by Leroy A. Guidry, Jr. The issues presented by that opposition were tried before a jury in the California court, and a verdict was rendered declaring the will to be invalid because of the "undue influence of Ruth A. Guidry." Judgment was rendered by the California trial court in accordance with that verdict, rejecting the prayer that the will be probated. An appeal was taken from that judgment, and on September 21, 1971, the Court of Appeal of the State of California, Second Appellate Division, Division One, affirmed the judgment of the trial court denying probate of the will.
The will has never been presented for probate in Louisiana. Nevertheless, this suit seeking a declaratory judgment decreeing the will to be invalid was filed on October 2, 1969. Plaintiff contends here that the will is invalid and unenforceable insofar as it affects Louisiana immovable property because: (1) The document lacked the formalities required by law for a valid testament; (2) the decedent lacked testamentary capacity; (3) the decedent's execution of the will was induced by Ruth Guidry's threat to commit him to an institution for the care of the mentally ill and by her false statements that his presumptive heirs no longer loved him; (4) the will and another document executed at about the same time constitute an agreement, in contravention of public policy, for the purpose of facilitating the dissolution of a marriage; and (5) the testator attempted to dispose of more than two-thirds of his property by gratuitous transactions during his life, and thus his donations infringed upon plaintiff's legitime.
In this proceeding the trial court decreed the will to be invalid, basing that decision solely on the ground that the California court had decreed it to be invalid under the laws of that state, but he reserved to the parties the right to apply for a rehearing if the judgment of the California trial court should be modified or changed by a higher court.

Motion to Stay Proceedings
Prior to the trial, defendants filed a motion to have all proceedings in this case stayed, under the provisions of LSA-C.C.P. art. 532, until a final judgment is rendered in the California proceedings. At the time the case was argued on this appeal, a decision had not been rendered by the California appellate court. That court has now affirmed the judgment of the trial court in that state, but the record does not indicate whether that decision now makes final the judgment of the California trial court decreeing the will to be invalid. We have concluded, however, that it is immaterial whether the California proceeding has resulted in a final judgment or not, since in any event the result would be the same.
*679 In this suit one of the grounds urged by plaintiff in attacking the validity of the purported will is that the testator did not have the capacity to make a will disposing of immovable property in Louisiana. The general rule is that issues relating to the capacity of the testator to make a will of immovable property will be resolved by applying the laws of the place where the property is situated, irrespective of the laws of the domicile of the testator or of the place where the will was executed. LSA-C.C. art. 10; LSA-C.C. art. 491; Selle v. Rapp, 143 Ark. 192, 220 S.W. 662 (1920); Hasling v. Martin, 114 La. 293, 38 So. 174 (1905); 16 Am.Jur.2d, Conflict of Laws, Sec. 59, Page 92; 15A C.J.S. Conflict of Laws § 16(5), Page 489; Restatement, Conflict of Laws, Sec. 249, Comment (a); LeFlar, American Conflicts Law, Sec. 196, Page 480 (1968).
This rule does not conflict with the provisions of Louisiana's Uniform Wills Act (LSA-R.S. 9:2401), or with the Uniform Probate Law (LSA-R.S. 9:2421-2425) or LSA-C.C.P. art. 2888, because these statutory provisions relate solely to the form or method of executing such documents. Shimshak v. Cox, 166 La. 102, 116 So. 714 (1928); Moore v. Executive Committee of Foreign Missions Presbyterian C., 171 La. 191, 129 So. 920 (1930); LSA-C.C. art. 1596.
In the instant suit, insofar as property in Louisiana may be affected, the issue of whether the testator had the capacity to make a will on May 22, 1968, must be governed by the laws of Louisiana. It thus is immaterial what the ultimate decision of the California courts may be as to the capacity of Leroy A. Guidry, Sr., to make a will, and no useful purpose would be served by staying these proceedings. Our conclusion is that the trial court correctly denied defendants' motion to stay these proceedings until a final judgment is rendered in the California suit.

Validity of Will as to Form
The document purporting to be the will of Leroy A. Guidry, Sr., consists of two typed pages. The signature of the testator appears at the end of the second page. Following that signature is another page containing a subscription or declaration signed by two witnesses, J. William Phillips and Verna M. Phillips. The will, on its face, appears to have been executed according to a form which is prescribed by California law.
The will was not executed in a form prescribed by Louisiana law. Under the provisions of LSA-R.S. 9:2401, however, a will executed outside the state in a manner prescribed by the law of the place of its execution shall have the same force and effect in this state as if executed in the manner prescribed by the laws of this state, provided the will is in writing and subscribed by the testator.
Plaintiff argues, first, that the Louisiana Uniform Wills Act (LSA-R.S. 9:2401) is not applicable, because the California court has already decreed that the will was not executed in a manner prescribed by the laws of that state, and that it thus is a "non-will" and is "void ab initio." We find no merit to that argument. The California court decreed that the will was invalid because of "undue influence"not because of any defect in form. We have already pointed out that we are not bound by the holding of the California court as to the capacity of the testator to make a will. LSA-R.S. 9:2401 relates solely to the form of the will. We find that the will in question here was executed according to the form prescribed by the laws of California, and that we thus are bound to recognize it here as being in valid form.
Plaintiff points out next that one of the witnesses who subscribed to the will, J. William Phillips, is an attorney who had been engaged to represent Mrs. Ruth Guidry, one of the legatees in the will, and that the other witness was the wife of that attorney. *680 He contends that the will was invalid because it was subscribed by agents of one of the legatees, and thus it was subscribed by "interested parties," a circumstance which renders the will void and unenforceable. We have been referred to no authorities which we regard as supporting that argument. Our conclusion is that the witnesses who attested or subscribed to the will were not interested parties, and that the will is not invalid because of their participation in executing it.
We thus find the will has been executed in the manner prescribed by the law of the place of its execution, and that insofar as the form of the will is concerned it is entitled to the same force and effect as if executed in the manner prescribed by the laws of this state.

Relief by Declaratory Judgment
Defendants filed an exception of no cause of action, based on the contention that LSA-C.C. art. 1644 and LSA-C.C.P. arts. 2853, 2901 and 2931, considered together, provide a method for attacking the validity of a will which is exclusive. They argue that pursuant to these authorities plaintiff cannot attack the validity of the will involved here until that will has been presented for probate. Since the will has not been presented for probate in Louisiana, defendants take the position that plaintiff cannot attack it even by seeking a judgment under the Declaratory Judgments Act (LSA-C.C.P. arts. 1871-1883).
Article 1644 of the Louisiana Civil Code provides, in substance, that no testament can have effect until it is probated. That article is not applicable here, because in this suit no one is seeking to execute or give the will effect prior to having it probated. This is simply an action for a declaratory judgment determining whether the will is or is not valid and thus whether it can be probated. We do not interpret the cited article as prohibiting the relief sought here. Articles 2853, 2901 and 2931 of the Code of Civil Procedure provide procedures for presenting wills for probate, for objecting to the probate and for annulling a will after it has been probated. We do not interpret any of those articles as meaning that the procedures therein prescribed are exclusive or that declaratory relief cannot be sought and obtained.
The cases cited and relied on by defendants are not applicable here. In Succession of McDermott, 136 La. 80, 66 So. 546 (1914), for instance, the will under attack there had been probated, and the court did not consider the issue presented here. And, in Love v. Rennie, 254 Ala. 382, 48 So.2d 458 (1950), a question of jurisdiction was presented. The Alabama Supreme Court held that a court of equity in that state did not have jurisdiction to construe a will until that will had been probated in a court of law. In the instant suit no such jurisdictional questions are presented.
The Declaratory Judgments Act specifically provides that a person interested under a will may have determined by declaratory relief any question of validity of that instrument. LSA-C.C.P. art. 1872. Article 1874 stipulates that a person interested as a legatee or an heir of the estate of a decedent may have a declaration of rights or legal relations in respect thereto "to determine any question arising in the administration of the estate or trust, including questions of construction of wills and other writings."
We think the above cited provisions of the Code of Civil Procedure authorize declaratory relief under the circumstances presented in this suit. And, since we find nothing in the law which prohibits or precludes that type of relief, we hold that plaintiff has the right to maintain this action for declaratory relief, even though the will has not been presented for probate in this state.

Testamentary Capacity
Plaintiff contends that the will is invalid because the testator lacked testamentary *681 capacity and because of "undue influence" on the part of the principal legatee, Mrs. Ruth Guidry.
The Louisiana Civil Code provides that a person, to make a donation inter vivos or mortis causa, must be of sound mind. LSA-C.C. art. 1475. Testamentary capacity is always presumed, and thus a presumption exists in favor of the validity of the will. Succession of Schmidt, 219 La. 675, 53 So.2d 834 (1951); Succession of Guidry, 160 So.2d 759 (La.App. 3 Cir. 1964); Succession of Lambert, 185 La. 416, 169 So. 453 (1936); Succession of Mithoff, 168 La. 624, 122 So. 886 (1929). The capacity to make a will is tested as of the time the will is made. Succession of Turner, 157 So.2d 740 (La.App. 2 Cir. 1963); Cormier v. Myers, 223 La. 259, 65 So.2d 345 (1953).
The burden of proving lack of testamentary capacity at the time the will was executed is upon the party alleging it. McCarty v. Trichel, 217 La. 444, 46 So.2d 621 (1950); Condon v. McCormick, 134 So.2d 619 (La.App. 3 Cir. 1961); Lewis v. DeJean, 251 So.2d 124 (La.App. 3 Cir. 1971). The degree of proof required to overcome the presumption of testamentary capacity is similar to that required in criminal cases to rebut and overcome the presumption of innocence which the law creates in favor of a person who is on trial for a crime. Succession of Mithoff, supra; Succession of Guidry, supra; Succession of Lambert, supra.
No inquiry is permitted into the motives which may have influenced a testator to make testamentary dispositions. "Undue influence," therefore, is not a ground for invalidating a will in Louisiana, as it is in California. LSA-C.C. art. 1492; Texada v. Spence, 166 La. 1020, 118 So. 120 (1928); Succession of Jacobs, 109 La. 1012, 34 So. 59 (1903). Evidence of force, duress or undue influence may be admitted in attacks upon the validity of wills, but that evidence should be considered only insofar as it tends to show lack of testamentary capacity. Succession of Andrews, 153 So.2d 470 (La.App. 4 Cir. 1963); Succession of Willis, 149 So.2d 218 (La. App. 2 Cir. 1963); Succession of Franz, 232 La. 310, 94 So.2d 270 (1957); Cormier v. Myers, supra.
The trial judge observed in his reasons for judgment that "a jury in California ruled the will invalid on grounds of undue influence." On that ground he concluded, "like the California court did," that the will is invalid in Louisiana. We think the trial court erred in reaching that conclusion.
We have already determined that in this state a will cannot be annulled simply on a showing of "undue influence." To succeed here plaintiff must show lack of testamentary capacity on the part of the testator. An exceptionally heavy burden of proof rests on plaintiff to establish that circumstance.
The evidence shows that the decedent, Leroy A. Guidry, Sr., suffered from numerous physical ailments and that he drank excessively at or about the time the will was executed. We do not question plaintiff's assertion that the decedent was a chronic alcoholic, that he frequently became depressed, that on a few occasions he threatened to commit suicide, and that at times his mind tended to wander.
The evidence also shows, however, that the decedent was sober for substantial periods at or about the time this will was executed, and that he was coherent and in control of his faculties when he was not intoxicated. Phillips, the attorney who was present at the time the decedent executed the will, testified that at that time the decedent was not intoxicated, that he appeared to be of sound and disposing mind, that he executed the will as his voluntary act, and that he was not acting under duress or undue influence.
Ann Kirsch testified that she visited with the decedent often over a period of five years immediately prior to his death, that he visited in her home on an average of *682 once or twice a month in 1968, that she and others took trips with the decedent to Las Vegas, Michigan and Florida during or about that time, and that on some of those trips the decedent drove the car. She stated that the decedent knew what he was doing during all of that time.
The wife of Doug Guidry testified that she saw the decedent about four times a month during 1968, and that he often took her and her husband out to dinner. She stated that on one evening in May, 1968, he took them to a restaurant, and he told them on that occasion that he had executed a new will on that date. She stated that he had not been drinking when he arrived at their home that evening, that he was not intoxicated, and that he was perfectly coherent.
Plaintiff relies heavily on the testimony of Dr. Joseph Olivier, a physician and psychiatrist. This expert never had the opportunity of seeing or examining the decedent, and he formed his opinions as to his testamentary capacity by reviewing medical records and letters of other physicians who had examined him. He concluded from the evidence which he collected that the decedent had extensive arteriosclerosis in brain vessels and that that condition could cause impairment of intellectual function. He expressed his conclusions as follows:
"I can state that it is very probable that he would not be able to exercise good judgment in sorting out what were his desires and deciding what was the most reasonable course for him to take at that time.
* * * * * *
"I don't believe that I have enough data to know whether Mr. Guidry by any medical legal term was insane in the legal sense in thatwhether he knew or didn't know the nature of what he was doing and the quality of his actions, and so on. I do feel that I have enough data to conclude that he would be excessively dependent upon the opinion of Ruth Guidry and would be more than usually compliant to her wishes and more susceptible to pressure from her, and this sort of thing."
We respect the opinions expressed by Dr. Olivier, but we do not construe his testimony as showing that the decedent lacked testamentary capacity at the time this will was executed.
The representations and threats made to the decedent by Mrs. Ruth Guidry prior to the execution of this will have been considered in order to determine whether the testator was capable of executing a will. Assuming that she made the representations and threats alleged by plaintiff, we have concluded that they do not establish lack of testamentary capacity.
Our conclusion is that the testator, Leroy A. Guidry, Sr., understood the nature of the testamentary acts, that he was aware of the meaning of the will which he executed on May 22, 1968, and that he understood the effect of the provisions of that testament. We find that the testator was capable of executing the will at issue here, and that the trial judge erred in decreeing the will to be invalid because of "undue influence."

Will Not Contra Bonos Mores
Plaintiff contends that circumstances surrounding the execution of the will, being contra bonos mores, preclude its probate. On the day the will was executed the decedent and Ruth Guidry executed a document entitled "Agreement to Will." In that document Ruth Guidry agreed not to sell or encumber certain property owned by her and to make a will in favor of the decedent. The decedent agreed not to sell or encumber certain property owned by him, and to make a will simultaneously therewith bequeathing his estate to Ruth Guidry or her son. The will which the decedent actually executed was in accord with that agreement.
Plaintiff contends that after executing this last mentioned document Ruth's attorney, Phillips, advised the decedent that no *683 further changes in the will would be effective without Ruth's consent. It is argued that this advice was "grossly negligent, at worst, villainous," and that in giving it "Ruth's attorney exceeded the bounds of propriety." He argues that this advice is contrary to LSA-C.C. art. 1690, that it misled the decedent, and that it thus would be contrary to good morals and public policy to give effect to the will.
Article 1690 of the Louisiana Civil Code provides that the testator cannot renounce his right to revoke a will, and that if he does agree or commit himself to such a thing, "such declaration shall be considered as not written." See Succession of Gillmore, 157 La. 130, 102 So. 94 (1924).
We do not interpret the agreement signed by the decedent as a renunciation of his right to revoke the will. But if such a construction could be placed on it, then we think the result would be that the agreement would be considered as not written. We do not believe that such an agreement, or the advice given by Mrs. Guidry's counsel, should have the effect of invalidating the will and thus authorizing the disposition of the decedent's estate contrary to his wishes.
Plaintiff suggests that there was some sort of fraudulent collusion between Ruth Guidry and her attorney to induce the decedent to execute the will. The record does not support that contention. We assume that Ruth Guidry influenced the decedent to bequeath the major part of his estate to her, since the California court held that she unduly influenced him, but we have already noted that that is not a ground for annulling the will in this state.
Our conclusion is that the probate of the will is not precluded on the ground that it is contra bonos mores or contrary to good morals and public policy.

Infringement on Plaintiff's Legitime
Plaintiff contends alternatively that the will at issue here is without legal effect insofar as it relates to immovable property in this state, because of the fact that the testator disposed of more than two-thirds of his property by gratuitous transactions during his life and that the Louisiana property belonging to his estate is not sufficient to satisfy his son's legitime.
Although plaintiff contends that the testator made several gratuitous donations of property during his life, the trial judge considered and construed only one conveyance made by him, and that was a partition agreement entered into between the decedent and his first wife, Frank H. Guidry, dated October 18, 1954. We have decided to limit our review solely to that conveyance.
Leroy A. Guidry, Sr., and his first wife, Frank H. Guidry, after having been married for 32 years, were divorced by judgment rendered by a Nevada court on October 13, 1954. In contemplation of that divorce, they entered into an agreement on August 24, 1954, labeled "Property Settlement Agreement." The purpose of the agreement, as stated by the parties, was "to define their respective rights with relation to each other, in contemplation of Leroy Sr. securing a final decree of divorce from Frank." In that agreement, each party conveyed to the other certain property, both real and personal. The decedent agreed to make Mrs. Frank Guidry the beneficiary under certain life insurance policies covering his life, and to make his son, Leroy A. Guidry, Jr., the beneficiary under another life insurance policy. The agreement further provides that:
"9. For and in consideration of Frank's forever waiving all rights to alimony from Leroy Sr., Leroy Sr. convenants and agrees for himself, his heirs and assigns to grant and convey to his wife, Frank, as her separate property, one-half of all gas, oil and other mineral rights and interests in real property in the State of Louisiana, now standing in his name alone as his separate property * * *."
*684 A supplement to that agreement was executed on September 29, 1954, but that supplement is not important to the issue presented here.
In the judgment of divorce which was rendered on October 13, 1954, the Property Settlement Agreement and the Supplement to it were specifically ratified by the court and made a part of the divorce decree. Thereafter, on October 18, 1954, the parties entered into a formal partition agreement, under the terms of which the decedent conveyed to Mrs. Frank Guidry undivided interests in a number of items of immovable property in Louisiana, consisting mostly of lands and mineral rights. The consideration for that conveyance, as recited in the agreement, was:
"The consideration for the above and foregoing transfer is a mutual desire of the parties to settle the community of acquets and gains. It is further understood that the hereinabove described property constituted the separate estate of Leroy A. Guidry, Sr., and the above transfer was made for the further consideration that Frank H. Guidry hereby forever waives and relinguishes all rights to alimony from Leroy A. Guidry, Sr.
* * * * * *
"As a result hereof, the parties hereto discharge each other from any further accounting to the community which formerly existed between them; the same being fully liquidated as above set forth."
Plaintiff contends that the partition agreement dated October 18, 1954, considered with the Property Settlement Agreement dated August 24, 1954, actually constituted a gratuitous transfer of immovable property from the decedent to Mrs. Frank Guidry. He takes the position that by virtue of those transactions Mrs. Frank Guidry received from the decedent a gratuity which had a value of $807,416.65 constituting more than two-thirds of the value of the entire estate left by the testator. He argues that the will thus is unenforceable as to the Louisiana property, because plaintiff's legitime of one-third, as provided by LSA-C.C. arts. 1493 and 1495, amounts to more than the value of the Louisiana property which now belongs to the estate.
To support his position that the transfer made to Mrs. Frank Guidry on October 18, 1954, was gratuitous, plaintiff argues that Mrs. Guidry had not asked for alimony, that she was not entitled to recover alimony under Nevada law, and that in any event the amount of alimony which she might have recovered would be nominal and insignificant in comparison with the value of the property conveyed to her.
The trial judge rendered judgment decreeing that the partition agreement dated October 18, 1954, constituted "a transfer for adequate consideration," and that "the property transferred therein shall not be considered in the computation of the disposable portion of the estate of Leroy A. Guidry in the State of Louisiana." We find no error in that part of the trial court's judgment.
We think Mrs. Guidry's waiver of her right to claim alimony, her agreement to partition the community property amicably, and her agreement to discharge the decedent from any further accounting to the community constituted adequate consideration for the transfers which were made to her. We make no findings here as to the value of the property or rights which were transferred to Mrs. Frank Guidry or as to the value of the property which the decedent owned at the time of his death. The evidence shows, however, that in and prior to 1954 Mr. Guidry owned as his separate estate several items of real property in Louisiana, and it is reasonably possible that his separate estate could have become indebted to the community during the 32 years he was married to his first wife. In the absence of a showing that there was no such indebtedness, or that there was no basis on which Mrs. Frank H. Guidry could have demanded an accounting to the community, we must conclude that Mrs. Guidry's agreement to discharge the decedent from an accounting to the community constitutes *685 a serious consideration. Also, we have no way of determining the amount of alimony which Mrs. Guidry may have been awarded if she had claimed it. The decedent had a substantial income at the time the divorce was granted, however, and we feel that the waiver of her right to claim alimony constituted a substantial consideration for the transfer.
We conclude, as did the trial court, that the partition agreement entered into between the decedent and Mrs. Frank H. Guidry, on October 18, 1954, did not constitute a gratuitous donation or transfer, and that the property transferred therein should not be considered in the computation of the disposable portion of the estate of the decedent.
The law provides that any disposal of property, whether inter vivos or mortis causa, which exceeds the disposable portion is not null, but only reducible to the quantum. LSA-C.C. art. 1502. In view of the conclusions which we have reached as to the above mentioned partition agreement, we hold that plaintiff has failed to show that the will at issue here is unenforceable on the ground that the bequests infringe on plaintiff's legitime. Subject to the judgment rendered here, the question of whether there should be a reduction of the donations made by the testator must be determined by the trial court if and when the will is presented for probate and the estate is opened.
For the reasons herein set out, we reverse that part of the judgment appealed from which decrees that the document dated May 22, 1968, purporting to be a testament executed by Leroy A. Guidry, Sr., is without effect in the State of Louisiana; and judgment is hereby rendered declaring that document to be the valid will of the testator, Leroy A. Guidry, Sr., decreeing that the said Leroy A. Guidry, Sr., had testamentary capacity to execute that will, and declaring that such will is entitled to the same force and effect in the State of Louisiana as if executed in the manner prescribed by the laws of this state.
We also reverse that part of the judgment of the trial court which reserves to the parties the right to apply for a rehearing if the judgment rendered by the California court on May 8, 1970, should be modified or changed by a higher court.
We affirm that part of the judgment appealed from which declares that the agreement dated October 18, 1954, between Leroy A. Guidry, Sr., and Frank H. Guidry, whereby the former transferred certain properties in the State of Louisiana to Frank H. Guidry, is a transfer for adequate consideration, and that the property transferred therein shall not be considered in the computation of the disposable portion of the estate of Leroy A. Guidry, Sr., in the State of Louisiana.
Except as herein specifically reversed or amended, the judgment appealed from is affirmed.
One-half of the costs of this appeal are assessed to plaintiff-appellee, and the remaining one-half of said costs are assessed to defendants-appellants.
Affirmed in part, reversed in part, and rendered.